# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Pielet v. Pielet**, 2012 IL 112064

---

| | |
|---|---|
| Caption in Supreme Court: | DOROTHY PIELET, Indiv. and as Ex'r of the Estate of Arthur Pielet, Appellee, v. JAMES PIELET *et al.*, (P.B.S. One, Inc., *et al.* Appellants). |
| Docket No. | 112064 |
| Filed | October 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a claim against a corporation for breach of contract did not accrue until after the corporation had dissolved, the claim failed as a matter of law and the defense was entitled to summary judgment—Business Corporation Act. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Mitchell L. Hoffman and the Hon. David C. Hall, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |

Counsel on
Appeal

Hinshaw & Culbertson LLP, of Chicago (Matthew J. O'Hara and Joshua G. Vincent, of counsel), for appellant P.B.S. One, Inc.

Kubasiak, Fylstra, Thorpe & Rotunno, P.C., of Chicago (Daniel J. Kubasiak and Manuel J. Placencia, of counsel), for appellants National Material L.P. and N.M. Holding, Inc.

Eugene J. Geekie, Jr., Michael Neil Lloyd, Amy M. Rubenstein and Brian McLeish, of Schiff Hardin LLP, of Chicago, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, and Theis concurred in the judgment and opinion.

Justice Burke concurred in part and dissented in part, with opinion, joined by Justice Freeman.

## OPINION

¶ 1        P.B.S. One, Inc., National Material L.P. and N.M. Holding, Inc., appeal from a judgment of the appellate court which reversed an order granting summary judgment in favor of plaintiff, Dorothy Pielet, and against them on certain counts of her fifth amended complaint alleging breach of contract and successor liability, but rejected their contention that summary judgment should have been entered in their favor as to those same counts and remanded the cause to the circuit court for further proceedings. 407 Ill. App. 3d 474. For the reasons that follow, we hold that the appellate court properly reversed the circuit court of Lake County's entry of summary judgment in favor of Dorothy and against P.B.S. One, Inc., on count XI of Dorothy's fifth amended complaint, but erred when it rejected P.B.S. One, Inc.'s argument that it was entitled to judgment as a matter of law on that count. The appellate court was also correct when it held that a genuine issue of material fact remained as to whether there was a novation involving another defendant in the case and that the existence of that question should have precluded entry of summary judgment in favor of Dorothy and against National Material and N.M. Holding, Inc., on counts IX and X of the complaint. The appellate court erred, however, when it went beyond those matters and addressed issues pertinent to whether National Material and N.M. Holding, Inc., would be liable in the absence of a novation. The appellate court's judgment is therefore affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 2                                          BACKGROUND

¶ 3      At issue in this case are the contractual obligations of successors to a scrap metal business founded by Dorothy's husband, Arthur Pielet, and his brothers shortly after the conclusion of the Second World War. The business, a Delaware corporation, was known as Pielet Brothers Scrap Iron and Metal, Inc. (PBSIMI).

¶ 4      Arthur sold his interest in PBSIMI to his sons James and Robert in 1986. Part of the consideration for the sale was a consulting agreement which provided that Arthur would "continue to act as a general advisor and consultant" to PBSIMI and, so long as he desired, would be a member of the company's board of directors and chairman of its board. In exchange, he was to receive a company car, health insurance and a yearly fee of $130,000, payable in equal monthly installments.

¶ 5      Under the terms of the agreement, which was executed on December 23, 1986, Arthur was to be paid the fee until his death, after which his widow would receive the fee for as long as she lived. The agreement further provided that the "inability [of Arthur] to render [consulting] services *** by reason of illness, disability or incapacity" would not be deemed "a breach or default by him." In addition, the agreement specified that it was binding "upon the parties [thereto], and their respective heirs, legal representatives, successors and assigns."

¶ 6      In 1988, PBSIMI changed its name to Pielet Corp. and James bought all of his brother Robert's shares in the company, leaving James as the sole shareholder. James then took steps to combine his interests in the scrap metal business with those of an individual named Cyrus Tang.

¶ 7      Forming the combined enterprise required a number of steps. First, Tang established a new corporation known as P.B.S. One, Inc., of which he was the sole shareholder. Next, P.B.S. One, Inc., purchased an undivided one-half interest in Pielet Corp.'s assets. In exchange for this acquisition, P.B.S. One, Inc., agreed to pay Pielet Corp. the sum of $6 million, plus additional sums based on Pielet Corp.'s taxable income, and to assume half of Pielet Corp.'s liabilities. Pielet Corp.'s obligation to pay Arthur Pielet annual consulting fees in the amount of $130,000 "for a term to end at the later to occur of the death of Arthur Pielet or his wife" was specifically listed in an attachment to the asset purchase agreement executed by P.B.S. One, Inc., and Pielet Corp.

¶ 8      Under the agreement, P.B.S. One, Inc., agreed "to perform all the covenants, agreements and obligations of [Pielet Corp.]" with respect to the liabilities it was assuming. The agreement governing the assumption further provided that its provisions would "inure to the benefit of and bind the parties hereto and their respective successors and assigns."

¶ 9      The third and final step in creating the combined enterprise was for P.B.S. One, Inc., and Pielet Corp. to form a limited partnership known as PBSIM L.P. P.B.S. One, Inc., and Pielet Corp. contributed their respective one-half interests in Pielet Corp. to capitalize the business. In exchange, each of those entities was named a limited partner and granted a 49.5% share in the business. The remaining 1% interest in PBSIM L.P. was given to another company, Pielet/Tang Enterprises, Inc.

¶ 10      Several years later, in 1991, P.B.S. One, Inc., sold its 49.5% interest in PBSIM L.P. to National Material L.P., another limited partnership controlled by Cyrus Tang, for

approximately $5.5 million. Under the sales agreement, National Material, succeeded P.B.S. One, Inc. as a limited partner in PBSIM L.P. and assumed the obligations previously borne by P.B.S. One, Inc., under the agreements by which PBSIM L.P. had been formed. On June 1, 1994, P.B.S. One, Inc., was dissolved. Its assets, including the approximately $5.5 million it received from the sale of its stake in PBSIM L.P., were distributed to Cyrus Tang.

¶ 11    Throughout these changes, the consulting agreement requiring monthly payments to Arthur continued to be honored. When PBSIM L.P. was formed, it was the entity which tendered the payments required by the contract. When PBSIM L.P. changed its name to Midwest Metallics in 1993, the monthly checks to Arthur were issued in the name of that company. This was done with Arthur's knowledge and approval. Midwest Metallics continued to tender monthly payments to Arthur pursuant to the original consulting agreement until 1998, when the payments ceased.

¶ 12    The reason Midwest Metallics stopped sending Arthur his monthly checks was because it was having serious financial difficulties. As a result of those difficulties, Midwest Metallics ceased paying virtually all its creditors. The following year, it filed for bankruptcy, listing assets of $550,683 and liabilities of $19,178,322. Of those liabilities, $17.4 million were to creditors holding secured claims. Arthur's claim was unsecured.

¶ 13    Shortly after Arthur stopped receiving the monthly payments he was due under the consulting agreement, he and his wife, Dorothy, brought this action in the circuit court of Lake County seeking damages based on breach of contract, promissory estoppel and equitable estoppel. Various parties were named as defendants including the Pielets' son James and Midwest Metallics.

¶ 14    Years of litigation ensued during which time Arthur died. Dorothy continued to press the case individually and as executor of his estate. In 2005, Dorothy sought and was granted leave to file her fifth amended complaint. That complaint contained 11 counts. Of those, only three are at issue in the proceedings before us today: count IX, alleging breach of contract against National Material and N.M. Holding, Inc., which was a general partner of National Material; count X, which sought to hold National Material and N.M. Holding, Inc., to the provisions of the consulting agreement on the grounds that they were a mere continuation of P.B.S. One, Inc.; and count XI, which asserted a claim for breach of contract against P.B.S. One, Inc.[1]

¶ 15    Early in 2006, P.B.S. One, Inc., moved for summary judgment in its favor on count XI, arguing that claims asserted against it by Dorothy, individually and as executor of Arthur's estate, were barred as a matter of law because they did not accrue until after P.B.S. One, Inc., had dissolved. P.B.S. One, Inc., contended, in the alternative, that it breached no contractual obligations to Arthur or Dorothy and that nothing P.B.S. One, Inc., did or failed to do was a proximate cause of the damages claimed by Arthur and Dorothy.

---

[1]Counts I though IV were dismissed pursuant to a settlement between Dorothy and James and his company, J.P. Investments, Inc. Counts V and VII were voluntarily dismissed by Dorothy after the circuit court disposed of the three counts at issue in this appeal. Counts VI and VIII were involuntarily dismissed earlier in the proceedings.

¶ 16    Shortly after P.B.S. One, Inc., moved for summary judgment as to count XI of the fifth amendment complaint, National Material and N.M. Holding, Inc., moved for summary judgment in their favor with respect to counts IX and X. As grounds for their motion, National Material and N.M. Holding, Inc., asserted that they were entitled to judgment as a matter of law because they had no contract with Arthur and did not assume any obligation to make payments to Arthur under the consulting agreement. They further argued that National Material (of which N.M. Holding, Inc., was a general partner) was merely a limited partner in PBSIM L.P. and, as such, was not liable for PBSIM L.P.'s debts. They also contended there was no basis for finding them liable under a theory of successor liability. In addition, they asserted that the consulting agreement was a contract for personal services and therefore could not be assigned without Arthur's consent, which he did not give.

¶ 17    At the same time summary judgment was sought by P.B.S. One, Inc., and National Material and N.M. Holding, Inc., Dorothy Pielet filed her own motions for partial summary judgment. In the first motion, Dorothy argued, *inter alia*, that she was entitled to judgment as a matter of law on the claim for breach of contract which she asserted against P.B.S. One, Inc., in count XI of her fifth amendment complaint. In a companion motion, Dorothy asserted that she was entitled to judgment as a matter of law in her favor and against National Material and N.M. Holding, Inc., on the claims she asserted against them for breach of contract and successor liability in counts IX and X of her fifth amended complaint.

¶ 18    The parties' respective motions for summary judgment were heard by the circuit court and decided in a written order entered August 31, 2006. In that order the court concluded that summary judgment should be entered in favor of Dorothy and against P.B.S. One, Inc., on count XI of Dorothy's complaint, which alleged breach of contract. The court likewise found that summary judgment should be entered in favor of Dorothy and against National Material and N.M. Holding, Inc., on the claims she asserted against them for breach of contract and successor liability in counts IX and X.[2]

¶ 19    Following a year of additional proceedings, the circuit court also granted summary judgment in favor of Dorothy and against P.B.S. One, Inc., and National Material and N.M. Holding, Inc., on the question of damages, finding that those defendants were jointly and severally liable for a total of $1,180,832.97 in back payments on the consulting agreement (109 missed payments of $10,833.33 each), plus prejudgment interest of $268,275.63. The court denied Dorothy's claim for an award of the present value of expected future monthly payments under the agreement, and held that P.B.S. One, Inc., and National Material and N.M. Holding, Inc., were not obligated to make payments to her for health insurance or automobile expenses. It reserved for later determination a request by Dorothy for an award of her attorney fees based on the provisions of the consulting agreement defendants were determined to have breached. That resolution came in January of 2009, after all remaining

---

[2]Also before the court were cross-motions for summary judgment on count V of the complaint, which involved a separate defendant. Summary judgment was denied on that count. As previously indicated, that count was subsequently dismissed by Dorothy voluntarily. Because the count is not at issue and has no bearing on the issues before us, there is no need for us to discuss it further.

issues in the case were disposed of. At that time the court entered an order awarding Dorothy $967,705.29 in attorney fees and $67,640.48 in costs. Judgment thereupon became final.

¶ 20    P.B.S. One, Inc., promptly appealed pursuant to Supreme Court Rule 301 (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994)), as did National Material and N.M. Holding, Inc. The issue presented by those appeals, which were consolidated, was whether the circuit court erred in granting summary judgment in favor of Dorothy and against defendants on counts IX, X and XI of her fifth amended complaint and in then awarding her attorney fees and costs. P.B.S. One, Inc., for its part, asserted that the circuit court's judgment should be reversed and that judgment should be entered in its favor for two reasons: (1) its obligations under the consulting agreement were transferred to and assumed by the entities which succeeded it through a novation under which the successor entities became substitutes for P.B.S. One, Inc., under the consulting agreement, or, in the alternative, (2) that any claims Dorothy may have had against P.B.S. One, Inc., did not accrue until after it dissolved in 1994 and were not subject to the survival provisions of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)).

¶ 21    National Material and N.M. Holding, Inc., in turn, contended that summary judgment was improper on count IX, which alleged breach of contract, because genuine issues of fact remained as to whether there was a novation and as to whether the consulting agreement was one of the obligations they assumed during the restructuring of the business. National Material and N.M. Holding, Inc., also asserted that genuine issues of material fact should have barred entry of summary judgment against them on count X, which was premised on principles of successor liability.

¶ 22    The appellate court concluded that Dorothy's breach of contract claim against P.B.S. One, Inc., was subject to the survival provisions of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)) despite the fact that the claim did not accrue until after P.B.S. One, Inc.'s dissolution. 407 Ill. App. 3d at 629. The court held, however, that triable issues of material fact remained as to whether the obligation to make payments under the consulting agreement had been assumed by another entity by means of a novation, thereby relieving P.B.S. One, Inc., or National Material and N.M. Holding, of any liability. Because resolution of the novation issue was necessary before the question of liability could be resolved, the court reversed the entry of summary judgment in favor of Dorothy on all three counts, affirmed the denial of summary judgment in favor of the defendants, and remanded to the circuit court for further proceedings. Correspondingly, it vacated the award of attorney fees and costs to her. 407 Ill. App. 3d at 512. Citing considerations of judicial economy, the appellate court then went on to consider additional points which would be dispositive should it turn out that there was no novation. Specifically, the appellate held that there was no genuine issue that National Material was the successor of P.B.S. One, Inc., and that because N.M. Holding, Inc., was a general partner of National Material, it would be liable for any of National Material's debts and obligations. 407 Ill. App. 3d at 508-12.

¶ 23    P.B.S. One, Inc., and National Material and N.M. Holding, Inc., petitioned the appellate court for rehearing. After their petitions were denied, P.B.S. One, Inc., petitioned our court for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). A separate petition for leave to appeal was filed by National Material and N.M. Holding, Inc. We denied the petition filed

by National Material and N.M. Holding, Inc., but allowed the petition filed by P.B.S. One, Inc., and then permitted National Material and N.M. Holding, Inc., to challenge the appellate court's judgments pursuant to Supreme Court Rule 318(a) (Ill. S. Ct. R. 318(a) (eff. Feb. 1, 1994)). The case was subsequently argued at this court's March 2012 term and is now before us for a decision.

¶ 24                                    ANALYSIS

¶ 25     Although P.B.S. One, Inc., and National Material and N.M. Holding, Inc., prevailed below in that they succeeded in having the appellate court set aside the judgment entered against them by the circuit court, they seek further review by this court because they believe that aspects of the appellate court's judgment are detrimental to their interests. The problem, so far as P.B.S. One, Inc., is concerned, is that the appellate court did not go far enough in granting it relief. P.B.S. One, Inc., asserts that instead of remanding for further proceedings, the appellate court should have held that it was entitled to judgment as a matter of law on the grounds that claims asserted against it by Dorothy did not arise until after the company dissolved and were not subject to the survival provisions of the Business Corporation Act of 1983 (see 805 ILCS 5/12.80 (West 2006)).

¶ 26     The grievance of National Material and N.M. Holding, Inc., is different. Those entities assert that after the appellate court reversed and remanded based on the novation question, it should not have expressed a view as to the merits of Dorothy's claims for breach of contract and successor liability. National Material and N.M. Holding, Inc., contend that the appellate court's rulings on those matters constituted impermissible advisory opinions and should be vacated. In the alternative, National Material and N.M. Holding, Inc., argue that the appellate court erred in holding that it had expressly assumed an obligation to make payments under the consulting agreement. They also assert that the lower courts interpreted and applied the doctrine of successor liability incorrectly.

¶ 27     Dorothy contends that the arguments raised by P.B.S. One, Inc., and National Material and N.M. Holding, Inc., are without merit and should be rejected. She also requests cross-relief. Specifically, she asks that we reverse the appellate court's judgment insofar as it reversed and remanded for further proceedings and that we affirm the circuit court's judgment in her favor.

¶ 28     As our statement of facts indicated, this case was decided in the context of cross-motions for summary judgment. When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284 (1958). However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment. *Haberer v. Village of Sauget*, 158 Ill. App. 3d 313, 317 (1987); *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993).

¶ 29     Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)). Pursuant to that statute, summary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment

-7-

as a matter of law. 735 ILCS 5/2-1005(c) (West 2006).

¶ 30    Where a case is decided through summary judgment, our review is *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010). *De novo* review is also appropriate to the extent that this case turns on construction of the provisions of the Business Corporation Act of 1983, a matter which presents a question of law. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50.

¶ 31    The section of the Business Corporation Act of 1983 relevant to this appeal is section 12.80 (805 ILCS 5/12.80 (West 2006)), which provides:

> "The dissolution of a corporation *** shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

¶ 32    The first question we must resolve today is whether this provision permits a claim for breach of contract to be asserted against P.B.S. One, Inc., a dissolved corporation, where the alleged breach did not take place until after the corporation was dissolved.[3] Until the appellate court ruled in this case, precedent uniformly indicated that the answer to this question would be no. The First District, for example, has held that "the rationale underlying [the] statute supports our decision that there is no basis for allowing a cause of action which accrues after dissolution to be brought against a dissolved corporation." *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App. 3d 569, 574 (1980); accord *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 20 (2001) (section 12.80 inapplicable where cause of action for breach of contract did not accrue until after corporation was dissolved). The Fourth District has taken the same view. *Beals v. Superior Welding Co.*, 273 Ill. App. 3d 655, 660 (4th Dist. 1995) (no valid cause of action which accrues after dissolution may be brought against a dissolved corporation). Federal courts and other authorities applying Illinois law are uniformly in accord. See *Cornick v. Hi Grade Cleaners, Inc.*, 595 F. Supp. 718, 720 (N.D. Ill. 1984); *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. 375, 377-78 (N.D. Ill. 1981); 10 Ill. Jur. *Business Relationships* § 10:54 (2007) (Illinois' statutory corporate survival provisions "permit suits only for causes of action that accrued before the dissolution").

---

[3]Had Dorothy waited more than five years after P.B.S. One, Inc.'s dissolution to file suit against it, any claim she had against it would clearly have been untimely whether the cause of action had accrued before or after the corporation's dissolution. That is so because the five-year extension to a corporation's life granted by section 12.80 establishes a fixed endpoint beyond which a corporation ceases to exist. After that point, it may no longer sue or be sued. See *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App. 3d 569, 574 (1980) (applying predecessor provision); 10 Ill. Jur. *Business Relationships* § 10:54 (2007). The record shows, however, that Dorothy acted within the statutory five-year window, if only just barely. P.B.S. One, Inc., was dissolved June 1, 1994. It was first named as a party in these proceedings in the first amended complaint, which was filed May 27, 1999, four days before the five-year statutory period would have run out.

-8-

¶ 33    When the appellate court considered the question in this case, it rejected this line of authority. Relying on the language of section 12.80 of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)) with its reference to preservation of remedies based on existing "claims" or "rights" as well as liabilities incurred, and on its own perception of the statute's purposes, the appellate court concluded instead that section 12.80 was "meant to preserve creditors' rights to collect on any outstanding corporate obligation, even if the corporation had not breached its obligation at the time of dissolution." 407 Ill. App. 3d at 496. Because it believed that section 12.80 applies to rights existing prior to a corporation's dissolution (407 Ill. App. 3d at 497) and because Dorothy's claims were predicated on an obligation—the consulting agreement—which existed before P.B.S. One, Inc., was dissolved, the appellate court reasoned that section 12.80 enabled Dorothy to press her claims even though the events which triggered those claims did not occur until after P.B.S. One, Inc., had ceased to exist. 407 Ill. App. 3d at 498.

¶ 34    In conducting its analysis of the language and history of section 12.80 of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)), the appellate court did not acknowledge (and may not have been aware) that a similar analysis undertaken by a federal court applying Illinois law had reached a contrary conclusion. The case was *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. 375 (N.D. Ill. 1981). At issue there was the meaning and effect of section 94 of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, ¶ 157.94), a prior codification of section 12.80. Section 94 provided:

> "The dissolution of a corporation *** shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name." Ill. Rev. Stat. 1979, ch. 32, ¶ 157.94.

Except for a shorter survival period, two years rather than the five specified in the current version of the law, section 94 was identical to section 12.80.

¶ 35    The statute became an issue in *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. 375 (N.D. Ill. 1981), because one of the defendants in the case sought to assert a claim for indemnity against a corporate codefendant after that codefendant had dissolved. Although there was no question that the indemnity claims had not accrued prior to the codefendant's dissolution, the defendant seeking indemnity asserted that the statute should be read to permit postdissolution actions within the statutory survival period so long as those actions are predicated on some "claim or right" against the corporation which existed before the dissolution occurred.

¶ 36    Relying on this court's decision in *Singer & Talcott Stone Co. v. Hutchinson*, 176 Ill. 48 (1898), and on the history of the statute, the court in *In re Johns-Manville/Asbestosis Cases* rejected that interpretation of the law. The court first observed that the version of the law at issue in *Singer & Talcott Stone Co. v. Hutchinson* did not contain the same "claim or right" language present in the current statute. It provided simply that the dissolution of a corporation would "not take away or impair any remedy given against such corporation, its

-9-

directors, or shareholders, for any liability incurred prior to such dissolution if suit thereon is brought and service of process had within two years after the date of such dissolution." *Id.* at 52. In contrast to other provisions of the law on corporations then in effect, which were designed for the benefit of the corporation, our court held that this provision "was enacted for the benefit of those whose rights had *accrued against the corporation previous to its dissolution*." (Emphasis added.) *Id.*

¶ 37 The court in *In re Johns-Manville/Asbestosis Cases* held that when the law was subsequently amended to include the "right or claim existing" language now found in section 12.80 and its predecessor provision, section 94, the amendment did not affect those who sought redress *against* a dissolved corporation. The purpose of the change was, instead, to permit actions *by* a corporation after dissolution. *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. at 377. To accomplish this, the legislature added both the words "to or" and the words "claim or right existing," leading to

"the familiar situation in which one disjunctive set of terms ('to or against') is logically read in conjunction with another disjunctive set ('any right or claim existing, or any liability incurred') by pairing the first term of each set and similarly pairing the last terms. That parsing of the statute comports not only with the way the statute grew but with normal grammatical construction. It is just as though the statute had two provisions reading:

… any remedy available to … such corporation … for any right or claim existing … prior to such dissolution …

… any remedy available … against such corporation … for … any liability incurred prior to such dissolution ... ." *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. at 377.

¶ 38 The *In re Johns-Manville/Asbestosis Cases* court noted that this construction was consistent with the one adopted by the appellate court in *O'Neill v. Continental Illinois Co.*, 341 Ill. App. 119, 136 (1950), which held that

"the language of Section 94 is clear and unambiguous. Under that section [(1)] any right or claim existing on behalf of a corporation or [(2)] any liability incurred by a corporation prior to its dissolution may be enforced ***."

The *In re Johns-Manville/Asbestosis Cases* court further noted that this construction was

"fully consistent with the use of the term 'right,' which in both Hohfeldian and common usage attaches to a party asserting, not a party defending, a claim. Just as the term 'liability' refers to obligations owed *by* the dissolved corporation, so 'right or claim' must refer to obligations owed *to* that corporation. In each instance the term relates to the dissolved corporation itself, not to its adversary." (Emphases added.) *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. at 377.

The *In re Johns-Manville/Asbestosis Cases* court therefore concluded that addition of the "right or claim" language had no effect on persons seeking redress against the corporation following its dissolution. Such claims continued to fall within the existing language pertaining to "liabilities incurred" prior to a corporation's dissolution. Under settled Illinois law, a liability must have accrued prior to a corporation's dissolution before the survival

provisions of the statute can be invoked. Because the codefendant's claim for indemnity at issue in *In re Johns-Manville/Asbestosis Cases* had not yet accrued when the defendant dissolved, the court concluded that the survival provisions of the statute were inapplicable and that the indemnity claim should therefore be dismissed. *In re Johns-Manville/Asbestosis Cases*, 516 F. Supp. at 377-78.

¶ 39    Except in limited circumstances not present here, we are not bound by decisions by lower federal courts. *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999). Such decisions may, however, be considered persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30. We are persuaded by the analysis in *In re Johns-Manville/Asbestosis Cases*, which is consistent with the history of the statute and the Illinois decisions which have construed it. We therefore reject the argument that Dorothy's cause of action constituted a remedy for "any right or claim existing" prior to P.B.S. One, Inc.'s dissolution within the meaning of section 12.80 of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)). Moreover, because the cause of action for failure to make payments under the consulting agreement did not accrue until well after the company dissolved, it cannot survive under the portion of the statute pertaining to civil remedies for liabilities existing prior to dissolution. As our discussion has indicated, Illinois precedent has consistently held that only causes of action against a corporation which have actually accrued prior to the corporation's dissolution are preserved by section 12.80 and its antecedents.

¶ 40    *Evans v. Illinois Surety Co.*, 298 Ill. 101 (1921), a case cited by Dorothy in her brief, is not to the contrary. Unlike the case before us, *Evans* did not involve the viability under survival provisions of the Business Corporation Act of a common law action for breach of contract which did not accrue until after the corporation had already dissolved. At issue in *Evans* was the obligation of a receiver of an insolvent surety company to honor surety bonds which the corporation had executed for the benefit of the State of Ohio prior to the receiver's appointment. The receiver was appointed after shareholders of the company had sued to prevent it from conducting further business. After the receiver was appointed, the court set a deadline for creditors to submit their claims to the receiver as part of the process of liquidating the company. In accordance with the court's order, the State of Ohio filed three claims to obtain payment under surety bonds the corporation had issued to it in connection with some highway projects.

¶ 41    Ohio sought payment under the bonds on the grounds that the contractors whose work was covered by the bonds had failed to perform their contractual obligations. The claims were referred to a master, who reported that no breach of the bond had been proven with respect to two of the claims and that the breach underlying the third claim had not occurred until after the receiver had been appointed. The court subsequently disallowed all three claims, but the appellate court reversed and remanded. It held that the third claim should have been allowed and that further proceedings were necessary with respect to the remaining two claims. *Evans*, 298 Ill. at 104.

¶ 42    The matter came before us on a certificate of importance. The central issue was whether the appointment of the receiver terminated the obligation of the company to pay compensation under surety contracts, such as the one on which the State of Ohio's third claim was based, where the events triggering liability on the contracts did not occur until

after the receiver was appointed. Applying the law then in effect to the facts before us, we held that the State of Ohio became a creditor of the company when the surety bond was issued and remained a creditor at the time the receiver was appointed, that the assets of an insolvent corporation belong to its creditors, and that so long as a creditor's claim against those assets was due and could be proven within the time permitted by statute or set by the court overseeing the receivership, it should be allowed. *Evans*, 298 Ill. at 113-16.

¶ 43    In reaching this result, we noted that the "court ha[d] not yet entered *** a decree of dissolution and could not enter it on the date when the receiver was appointed." *Evans*, 298 Ill. at 117. We further noted that the appointment of a receiver for an insolvent corporation " 'does not work [the corporation's] dissolution in the absence of a judicial declaration to that effect *** [n]or does it determine the rights of any of the parties concerned.' " *Evans*, 298 Ill. at 111 (quoting *Woodland v. Wise*, 76 A. 502, 503-04 (1910)). Rather, the receiver serves as "the representative and successor of the company and is the arm of the law and the agent of the court for the purpose of administering its assets and making distribution among its creditors and holders of its obligations." *Id.* at 110-11. Given the nature and function of a receiver, and taking into account established principles governing sureties, we concluded that the appointment of a receiver did not operate as a line of demarcation separating claims against the surety company which were viable from those which were not. *Id.* To the contrary, we viewed the situation as presenting "exactly the situation" considered in a case from Maryland, where it was held that " 'the liabilities of the insolvent but undissolved corporation were not affected by the receivership, and its assets were thereby merely impressed with a trust for its creditors.' " *Id.* at 111 (quoting *Woodland v. Wise*, 76 A. at 504). We therefore affirmed the appellate court's judgment.

¶ 44    This case, of course, is quite different. What happens to obligations under outstanding surety contracts when the surety company becomes insolvent and goes into receivership, but is not yet dissolved, is not the issue before us here. This case does not involve a surety company. It does not involve a receiver. It does not involve a corporation which is insolvent but not yet dissolved. We therefore do not believe that it supports Dorothy's position in this case.

¶ 45    Dorothy's position can likewise find no support in *Hamilton v. Conley*, 356 Ill. App. 3d 1048 (2005), another case on which she relies. The issue there was whether the former shareholder of a dissolved corporation could bring a cause of action against the sole officer and director of the corporation and corporate entities he controlled on the grounds that the officer and director had used fraud to take control of the dissolved corporation and misappropriate its assets for his own benefit. Two issues were presented for review: (1) whether plaintiff had standing to bring the action and (2) whether his claims were time-barred under section 12.80 of the Business Corporation Act of 1983. *Id.* at 1052.

¶ 46    The appellate court concluded that the corporation would have been able to bring the action and that, as a shareholder, plaintiff could succeed to that action following the corporation's dissolution. His claims, however, would be subject to the rights of the corporation's creditors. Moreover, because plaintiff had not purported to act on behalf of all of the corporation's shareholders, the appellate court held that he was "entitled to recover proportionately to his share only." *Hamilton v. Conley*, 356 Ill. App. 3d at 1059.

¶ 47 This case presents no issue as to standing, so the foregoing discussion is of no relevance. The reason Dorothy has invoked *Hamilton* is because of its treatment of the second question, timeliness of an action under section 12.80. The timeliness problem in *Hamilton v. Conley*, however, was separate and distinct from the issue presented by this case. The problem in *Hamilton v. Conley* was whether a derivative action could still be brought by plaintiff, who was a shareholder, to recover corporate assets from a third party even though the five-year survival period specified in section 12.80 of the Business Corporation Act of 1983 had run out. Applying equitable considerations and the principle that statutes should be construed to avoid results that are absurd, inconvenient or unjust, the court concluded that the fraud alleged by plaintiff justified permitting him to press his claim notwithstanding the fact that it would otherwise be time-barred. *Hamilton v. Conley*, 356 Ill. App. 3d at 1059-60. In this case, of course, there was no question as to compliance with the statutory five-year period. As we have discussed, the five-year window specified by section 12.80 was met, if only by a few days. Morever, the claim asserted by Dorothy here is not a derivative action asserting an interest of the corporation. It is an action *against* the corporation itself. As we have indicated, the precedent in Illinois has consistently held that the survival provisions of section 12.80 and its antecedents may only be invoked in aid of a cause of action against a dissolved corporation where the cause of action accrued prior to the corporation's dissolution. We do not read *Hamilton v. Conley* as supporting a contrary view.

¶ 48 It is true, as Dorothy points out, that the language of section 12.80 itself speaks only of actions based on "liability incurred" prior to a corporation's dissolution. The literal terms of the law do not specify that the cause of action must also have accrued before the corporation dissolved. The accrual requirement is based on long-standing judicial construction of the statute. The legislature is presumed to be aware of judicial decisions interpreting legislation. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 218 (1983). Section 12.80 and its antecedents have been revisited and revised by the legislature on multiple occasions over a substantial period of time, most recently in 1988 (Pub. Act 85-1344, § 4 (eff. Aug. 31, 1988)) and 2001 (Pub. Act 92-33, § 5 (eff. July 1, 2001)). At no time has the law been amended in a way which suggests that the legislature intended for it to be interpreted differently than the courts have held. Where terms used in a statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments, we assume that the legislature intended for the amendment to have the same interpretation previously given. Moreover, where, as here, the legislature has acquiesced in a judicial construction of the law over a substantial period of time, the court's construction actually becomes part of the fabric of the law, and a departure from that construction by the court would be tantamount to an amendment of the statute itself. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 20-21 (1997). Mindful of these principles, we decline to depart from precedent and will not adopt the new construction of section 12.80 advocated by Dorothy and adopted by the appellate court in this case.

¶ 49 Because section 12.80 of the Business Corporation Act of 1983 may only be invoked in aid of a cause of action against a dissolved corporation where the cause of action accrued prior to the corporation's dissolution, and because there is no dispute that the cause of action for breach of contract asserted by Dorothy against P.B.S. One, Inc., in count XI of her fifth amended complaint did not accrue until well after P.B.S. One, Inc., had dissolved, we must

-13-

conclude that count XI must fail as a matter of law. This determination renders unnecessary any discussion of whether P.B.S. One, Inc., could also be relieved of liability based on the theory of novation, as the appellate court believed might be the case. Whether there was a novation or not, Dorothy's cause of action against P.B.S. One, Inc., for breach of contract could not go forward for the reasons we have just explained. The circuit court therefore erred when it granted Dorothy's motion for summary judgment and entered summary judgment against P.B.S. One, Inc., and in favor of Dorothy on that count. Correspondingly, the appellate court should have reversed that aspect of the circuit court's judgment and ruled that summary judgment should be entered in favor of P.B.S. One, Inc.

¶ 50    We turn then to the lower courts' disposition of count IX, which alleged breach of contract against National Material and N.M. Holding, Inc., National Material's general partner, and count X, which sought to hold National Material and N.M. Holding, Inc., to the provisions of the consulting agreement on the grounds that they were a mere continuation of P.B.S. One, Inc. As described earlier in this opinion, the circuit court granted summary judgment in favor of Dorothy on both counts, but the appellate court reversed and remanded, just as it did with count XI against P.B.S. One, Inc., because it believed that genuine issues of material fact remained with respect to the issue of whether there had been a novation.

¶ 51    Although resolution of the novation question is unnecessary with respect to P.B.S. One, Inc.'s liability (as just explained, it is no longer subject to suit whether there was a novation or not), we agree with the appellate court that it is pivotal to Dorothy's claims against remaining defendants, National Material and N.M. Holding, Inc. The reason it is pivotal is apparent: if the contractual obligation to pay Arthur and then his widow passed to and was assumed by another party, specifically, PBSIM L.P., through a novation, then it was PBSIM L.P. which was liable to Dorothy when the payments ceased. Any direct responsibility National Material and N.M. Holding, Inc., may have had to honor the consulting agreement, whether through express assumption of P.B.S. One, Inc.'s obligations or as a mere continuation of P.B.S. One, Inc., would have been extinguished, for that is the effect of a novation (see *Faith v. Martoccio*, 21 Ill. App. 3d 999, 1003 (1974)). Nor could National Material and N.M. Holding, Inc., be liable based on the ownership interests they acquired in PBSIM L.P. from P.B.S. One, Inc., because while N.M. Holding, Inc., was a general partner of National Material, National Material itself was merely a limited partner of PBSIM L.P., and it is well established that a limited partner is neither a partner nor a principal in the business or transactions of the partnership. The liability of a limited partner is to the partnership in the form of his capital contribution, and not to the creditors. *Kramer v. McDonald's System, Inc.*, 77 Ill. 2d 323, 335 (1979).

¶ 52    Because the question of novation is central to the viability of Dorothy's claims against National Material and N.M. Holding, Inc., it is important to understand what the requirements for a novation are. A novation occurs when there is a substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one which is thereby extinguished. In order for there to be a novation, four elements are required: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Roth v. Dillavou*,

-14-

359 Ill. App. 3d 1023, 1032 (2005). The intention of the parties to extinguish a debt is not presumed, and the party claiming discharge has the burden of proving novation by a preponderance of the evidence. *Aluminum Co. of America v. Home Can Manufacturing Corp.*, 134 Ill. App. 3d 676, 682 (1985).

¶ 53    Dorothy contends that the appellate court erred in setting aside the judgment in her favor as to National Material and N.M. Holding, Inc., because those defendants have not shown and cannot establish the facts necessary to meet their burden of showing that any novation was effectuated in this case. We must remain mindful, however, that this matter was decided in the context of motions for summary judgment, and the purpose of summary judgment is not to try questions of fact but simply to determine if triable questions of fact exist. Summary judgment should not be granted unless the moving party's right to judgment is clear and free from doubt. If the undisputed material facts could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 54    The standard for summary judgment is a formidable one, and we agree with the appellate court that it was not met here. The appellate court thoroughly reviewed the record in this case, which is voluminous. Its opinion highlighted the salient affidavits, depositions and other relevant materials adduced in connection with the cross-motions for summary judgment. 407 Ill. App. 3d at 477-84, 500-03, 506. No purpose would be served by repeating that discussion here. We think it sufficient to say there remains considerable room for dispute as to whether the parties intended for there to be an entirely new contractual arrangement under which PBSIM L.P. would be the party obligated to make payments in accordance with the original consulting agreement, thereby discharging any obligations owed under that agreement by P.B.S. One, Inc., and the other defendants in the case, or whether the understanding was that PBSIM L.P. would merely assume liability as an additional obligor without releasing any other entities from their responsibilities to make payments to Arthur and, upon his death, to Dorothy.

¶ 55    Having concluded that there is no basis for disturbing the appellate court's conclusion that summary judgment should not have been entered in favor of Dorothy on counts IX and X of her fifth amended complaint, we next consider the argument raised by National Material and N.M. Holding, Inc., that the appellate court should not have gone on to assess whether there would be grounds for holding them liable under those counts should it turn out on remand that there was, in fact, no novation. National Material and N.M. Holding, Inc., assert that once the appellate court reversed the entry of summary judgment against them, it should have refrained from further discussion of the merits of Dorothy's claims. National Material and N.M. Holding, Inc., argue that the additional discussion was not relevant or necessary to the court's decision to reverse the entry of summary judgment based on the novation issue and that it therefore constituted an improper advisory opinion which should be vacated.

¶ 56    We believe the position of National Material and N.M. Holding, Inc., is well taken. Courts of review possess considerable discretion with respect to the disposition of cases such as this one which must be remanded for further proceedings. When appropriate, a reviewing

court may address issues that are likely to recur on remand in order to provide guidance to the lower court and thereby expedite the ultimate termination of the litigation. With limited exception, however, courts should refrain from deciding an issue when resolution of the issue will have no effect on the disposition of the appeal presently before the court. *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 41; *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009); *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003).

¶ 57    In this case, the additional issues addressed by the appellate court regarding the liability of National Material and N.M. Holding, Inc., under counts IX and X of Dorothy's fifth amended complaint will come into play if and only if there proves to have been no novation involving PBSIM L.P. At this point, that remains an open question. Whether the additional issues will ever become relevant is therefore a matter of speculation. Should they become germane, "the parties are free to raise [them] with the benefit of the additional facts and evidence that will be adduced at the proceedings held on remand." *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d at 469. For now, however, any discussion of the issues is premature. We therefore set aside that portion of the appellate court's opinion which addressed the issues bearing on the liability of National Material and N.M. Holding, Inc., under counts IX, for breach of contract, and count X, alleging successor liability, absent a novation.

¶ 58                                   CONCLUSION

¶ 59    For the foregoing reasons, the appellate court properly reversed the circuit court's entry of summary judgment in favor of Dorothy and against P.B.S. One, Inc., on count XI of Dorothy's fifth amended complaint, but erred when it failed to recognize that P.B.S. One, Inc., was entitled to judgment as a matter of law on that count. The appellate court was also correct when it held that a genuine issue of material fact remained as to whether there was a novation involving PBSIM L.P. and that the existence of that question should have precluded entry of summary judgment in favor of Dorothy and against National Material and N.M. Holding, Inc., on counts IX and X of the complaint. It erred, however, when it went beyond those matters and addressed issues pertinent to whether National Material and N.M. Holding, Inc., would be liable in the absence of a novation. The appellate court's judgment is therefore affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 60    Affirmed in part and reversed in part.

¶ 61    Cause remanded.

¶ 62    JUSTICE BURKE, concurring in part and dissenting in part:

¶ 63    I join the majority's holding that Dorothy's claim for breach of contract against P.B.S. One, Inc., fails as a matter of law because the claim is not subject to the survival provisions of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2006)). I also join the majority's holding that there are material questions of fact which preclude the entry of summary judgment on the question of whether there was a novation. I dissent, however,

-16-

from the majority's decision to set aside, as an improper advisory opinion, the appellate court's discussion regarding the liability of defendants National Material and N.M. Holding, Inc., under counts IX and X of Dorothy's complaint.

¶ 64                                                    I

¶ 65    In count IX of her fifth amended complaint, Dorothy alleged that National Material and N.M. Holding, Inc., were liable for breach of contract because National Material had expressly assumed all obligations of P.B.S. One, Inc., including the obligation to pay Dorothy pursuant to the consulting agreement. In count X, Dorothy alleged that National Material and N.M. Holding, Inc., were a mere continuation of P.B.S. One, Inc., and thus, under principles of successor liability, were responsible for continuing the payments under the consulting agreement. National Material and N.M. Holding, Inc., disputed these allegations and moved for summary judgment. Dorothy filed a cross-motion for summary judgment. Both sides maintained they were entitled to judgment as a matter of law.

¶ 66    In addition to the merits of counts IX and X, the circuit court also had before it a question regarding novation. Specifically, the circuit court was asked to decide whether another entity, PBSIM L.P., had assumed the obligations under the consulting agreement through a novation, thereby relieving P.B.S. One, Inc., of any responsibility for payments. This issue was important for National Material and N.M. Holding, Inc., because any responsibility National Material and N.M. Holding, Inc., had to honor the consulting agreement flowed through P.B.S. One, Inc. Thus, if the novation existed, and extinguished liability for P.B.S. One, Inc., it extinguished liability for National Material and N.M. Holding, Inc., as well.

¶ 67    The circuit court granted Dorothy's motion for summary judgment and denied National Material and N.M. Holding, Inc.'s motion. The court held, as a matter of law, that there was no novation and that Dorothy was entitled to judgment on counts IX and X.

¶ 68    National Material and N.M. Holding, Inc., appealed. They argued that the circuit court erred both in granting Dorothy's motion for summary judgment and in denying their own motion for summary judgment. The majority of their appellate briefs, however, were focused on the latter argument, setting forth the reasons why they were entitled to judgment as a matter of law. See, *e.g.*, *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357 (1999) (the denial of a summary judgment motion may be appealed when cross-motions for summary judgment have been filed on the same claim and the opposing party's motion has been granted). According to National Material and N.M. Holding, Inc., they were entitled to summary judgment on count IX because under the "unambiguous language" of the assignment and assumption agreement they did not assume any of P.B.S. One, Inc.'s obligations under the consulting agreement. With respect to count X, National Material and N.M. Holding, Inc., argued that they were entitled to judgment as a matter of law because under "the undisputed facts and applicable law" there was no successor liability. Finally, National Material and N.M. Holding, Inc., argued that, as a matter of law, "a novation was effectuated" and, therefore, they could not be liable for any failure to make payments under the consulting agreement.

¶ 69    The appellate court held that there were material questions of fact with respect to novation that precluded entry of summary judgment on that issue. On the merits of counts

IX and X, the appellate court affirmed the holdings of the circuit court. Accordingly, the appellate court rejected National Material and N.M. Holding, Inc.'s "contention that summary judgment should have been entered in their favor" (*supra* ¶ 1).

¶ 70                                                    II

¶ 71     The majority affirms the appellate court's holding that there are material questions of fact regarding the novation but sets aside that portion of the appellate court's opinion which discusses the merits of counts IX and X. Noting that courts "should refrain from deciding an issue when resolution of the issue will have no effect on the disposition of the appeal presently before the court" (*supra* ¶ 56), the majority holds that the appellate court's discussion of the merits of counts IX and X was an improper advisory opinion because those issues "will come into play if and only if there proves to have been no novation" (*supra* ¶ 57). Therefore, according to the majority, any discussion of the merits of counts IX and X by the appellate court was "premature." *Id*. I disagree.

¶ 72     The majority's analysis would make sense if the only issue before the appellate court had been whether the circuit court correctly granted Dorothy's motion for summary judgment against National Material and N.M. Holding, Inc. This is so because to prevail on summary judgment, Dorothy had to establish *both* that there was no novation *and* that she was entitled to judgment on the merits of counts IX and X. Thus, it is correct to say that the presence of material questions of fact on the issue of novation, by itself, precluded the entry of summary judgment in favor of Dorothy and, therefore, it was logically unnecessary to discuss the merits of counts IX and X to determine whether Dorothy could prevail.

¶ 73     But that was not the only issue before the appellate court. As noted, National Material and N.M. Holding, Inc., argued in large part in the appellate court that summary judgment should have been entered in their favor. To prevail in this argument, National Material and N.M. Holding, Inc., had to establish *either* that there was a novation (which would have extinguished any liability) *or* that they were entitled to judgment on the merits of counts IX and X. Even if there was a question of fact on the novation issue, National Material and N.M. Holding, Inc., could still have been entitled to summary judgment, if the appellate court had ruled in their favor on the merits of counts IX and X. Thus, it is incorrect to say that the presence of material questions of fact on the issue of novation precluded the entry of judgment in favor of National Material and N.M. Holding, Inc., or made the discussion of the merits of counts IX and X unnecessary to determine whether they could prevail.

¶ 74     Although the appellate court stated that it was discussing the merits of counts IX and X for reasons of "judicial economy" (407 Ill. App. 3d at 508), the court in fact had to address those issues. If the appellate court had agreed with National Material and N.M. Holding, Inc.'s arguments, and found no assignment and no successor liability, then the court would have entered summary judgment for them and the case would have ended, regardless of how the novation issue was resolved. Accordingly, the merits of counts IX and X were "live" issues whose resolution would have a direct effect "on the disposition of the appeal presently before the court" (*supra* ¶ 56). Indeed, given the arguments before it, the appellate court would have erred if it had not addressed those issues. That the appellate court reached an unfavorable result for National Material and N.M. Holding, Inc., does not change that fact

or render the appellate court's opinion advisory.

¶ 75 The majority's treatment of P.B.S. One, Inc.'s arguments in this court illustrates why the appellate court did not err. With respect to the issue of novation, P.B.S. One, Inc., is in the same posture as National Material and N.M. Holding, Inc. That is, like National Material and N.M. Holding, Inc., P.B.S. One, Inc., has argued that it is entitled to summary judgment on the breach of contract claim directed toward it. And, like National Material and N.M. Holding, Inc., P.B.S. One, Inc., has also argued that the novation extinguished any liability it had to Dorothy. Yet, despite holding that there are material questions of fact regarding the novation, the majority addresses the merits of P.B.S. One, Inc.'s claim and concludes that it is entitled to the entry of summary judgment:

> "Whether there was a novation or not, Dorothy's cause of action against P.B.S. One, Inc., for breach of contract could not go forward for the reasons we have just explained. The circuit court therefore erred when it granted Dorothy's motion for summary judgment and entered summary judgment against P.B.S. One, Inc., and in favor of Dorothy on that count. Correspondingly, the appellate court should have reversed that aspect of the circuit court's judgment and ruled that summary judgment should be entered in favor of P.B.S. One, Inc." *Supra* ¶ 49.

¶ 76 National Material and N.M. Holding, Inc., made this same argument in the appellate court, *i.e.*, that they were entitled to judgment as a matter of law on counts IX and X, regardless of how the novation issue was resolved. If it is not an advisory opinion for this court to address the merits of P.B.S. One, Inc.'s claim, then it was likewise not an advisory opinion when the appellate court addressed the merits of National Material and N.M. Holding, Inc.'s claims.

¶ 77 For the foregoing reasons, I respectfully dissent in part.

¶ 78 JUSTICE FREEMAN joins in this partial concurrence and partial dissent.