# Illinois Official Reports

## Appellate Court

*Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748

| | |
|---|---|
| Appellate Court Caption | PAUL PERONA, ROBERT C. IZENSTARK, and DONALD S. MAWLER, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. VOLKSWAGEN OF AMERICA, INC., AUDI AG, and VOLKSWAGEN AG, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-13-0748 |
| Filed | December 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action brought under the Consumer Fraud Act against defendant automobile manufacturers based on certain alleged defects in automobiles plaintiffs had purchased, the appellate court held that the trial court properly granted defendants summary judgment, denied plaintiffs' cross-motion for summary judgment, and granted defendants' motion to strike the affidavits of plaintiffs' expert witnesses, especially when the appellate court determined that the trial court properly limited plaintiffs' discovery request by ruling that plaintiffs had abandoned their claim that the cruise control was defective in the automobiles at issue, that plaintiffs were properly denied leave to file a seventh amended complaint nearly two decades after the initial complaint was filed, and that the defendants were not required to respond to discovery requests plaintiffs made with respect to privileged documents. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-CH-12640; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

William J. Harte and Walner Law Firm, LLC, both of Chicago (Lawrence Walner and Aaron R. Walner, of counsel), and Robert F. Lisco, of Lincolnwood, for appellants.

Johnson & Bell, Ltd., of Chicago (James K. Toohey and Garrett L. Boehm, Jr., of counsel), for appellees.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1 This appeal arises from the February 7, 2013 order entered by the circuit court of Cook County, which granted summary judgment in favor of defendants Volkswagen of America, Inc., Audi AG, and Volkswagen AG; denied a cross-motion for summary judgment filed by plaintiffs Paul Perona, Robert Izenstark, and Donald Mawler; and granted defendants' motion to strike the affidavits of plaintiffs' two expert witnesses, in a class action brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)). On appeal, the plaintiffs argue that: (1) the circuit court erred in barring them from showing any defects implicating the cruise control system in the vehicles that were the subject of the instant action, where they had previously "withdrawn" their allegation of a cruise control system defect during discovery; (2) the circuit court erred in denying them leave to file a seventh amended complaint; (3) the circuit court erred in granting summary judgment in favor of Volkswagen of America, Inc., Audi AG, and Volkswagen AG on the plaintiffs' Consumer Fraud Act claim; and (4) the circuit court erred in refusing to require Volkswagen of America, Inc., Audi AG, and Volkswagen AG to respond to certain discovery requests by the plaintiffs. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND
¶ 3 This case involves a long and complex history and only the most pertinent facts are summarized below. In March 1987, plaintiffs, who purchased Audi 5000 automobiles during model years 1983 through 1986, filed a class action lawsuit against Volkswagen of America, Inc. (the importer and distributer of Audis in the United States), Audi AG (the Audi manufacturer), and Volkswagen AG (the parent corporation of Audi AG and Volkswagen of America) (collectively, Audi). The claims arose out of the alleged unintended acceleration of the Audi 5000 automobiles. On March 4, 1992, a fifth amended complaint was filed by 12 plaintiffs purporting to represent a class of all purchasers and lessees of Audi 5000 automobiles with model years 1983 through 1986 and a subclass of persons whose automobiles allegedly experienced an incident of unintended acceleration. The fifth amended

complaint alleged claims under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1992)), the Uniform Commercial Code (the UCC) (810 ILCS 5/2-313, 2-314 (West 1992)), and the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (the Magnuson-Moss Act) (15 U.S.C. § 2301 *et seq.* (1994)). Specifically, the fifth amended complaint alleged that during the 1980s, owners of 1983 through 1986 automatic transmission Audi 5000 vehicles experienced incidents where their automobiles accelerated from a stopped position to full throttle at times when the automobile was at a standstill or the driver had his or her foot on the brake pedal. At least 2,000 incidents of unintended acceleration occurred, resulting in at least 513 accidents, 271 injuries, and 5 deaths. The fifth amended complaint further alleged that these incidents were caused by defects in the design or manufacture of Audi 5000 automobiles manufactured and sold during the model years 1983 through 1986. The alleged defects include: (1) the lever and cable system linking the transmission shift lever; (2) the brake and gas pedal placement and separation; (3) the cruise control system; and (4) the shift lock system. The class plaintiffs claimed damages in the amount of the diminution of the resale value of their Audi 5000 vehicles. The circuit court[1] dismissed the fifth amended complaint for failure to allege specific defects under the Consumer Fraud Act and failure to allege proper notice on its UCC warranty claims and Magnuson-Moss Act claims. On appeal, in 1997, this court affirmed the circuit court's dismissal of the UCC and the Magnuson-Moss Act claims, but reversed the circuit court's dismissal of the Consumer Fraud Act claims on the grounds that the plaintiffs had "adequately alleged consumer fraud violation based on material omission as to the sudden acceleration problem." *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59 (1997). However, the *Perona* court limited the Consumer Fraud Act claims to those Audi 5000 automobiles purchased before Audi issued press releases acknowledging the existence of excessive unintended accelerations.[2] *Id.* at 69.

¶ 4      On remand, on May 15, 2003, almost six years after the *Perona* court's decision, the plaintiffs filed the instant sixth amended complaint. The sixth amended complaint contained many of the same allegations as the fifth amended complaint but focused only on the violation of the Consumer Fraud Act claim relating to Audi 5000 vehicles with automatic transmissions and model years 1984 through 1986–the claim which this court had found to have survived dismissal in its 1997 *Perona* decision. The sixth amended complaint alleged that the Audi 5000 class vehicles were defective in design or production and reiterated the same alleged defects as those listed in the fifth amended complaint–(1) the lever and cable system linking the transmission shift lever; (2) the brake and gas pedal placement and separation; (3) the cruise control system; and (4) the shift lock system. The plaintiffs once again alleged that the "defects were hidden or latent and not discoverable by plaintiffs with reasonable diligence" and alleged that Audi, with actual knowledge of the latent defects, concealed that information from the public. The plaintiffs alleged that violations of the Consumer Fraud Act occurred when Audi fraudulently and deceptively withheld information from the public about the "dangerous and defective condition"; that Audi fraudulently misled the public that there was no defect in the class vehicles; and that Audi fraudulently and deceptively refused to bring to the attention of

---

[1]Judge Walter Bieschke presided over the dismissal proceedings.

[2]Although Audi released two press releases regarding unintended accelerations, Audi denied any mechanical or design defects existed and its position was that driver error was responsible for the incidents of unintended acceleration. See *Perona*, 292 Ill. App. 3d at 62.

the class members the defect in the class vehicles "until ordered and directed to do so by the requirements of the National Traffic and Motor Vehicle Safety Act."

¶ 5    On January 16, 2004, Audi served the plaintiffs with interrogatories. Interrogatory number 25 of the interrogatories asked the following:

> "25. In what regard and based on what evidence do you base your claim that the subject vehicle was defective and was subject to unintended acceleration because of the 'cruise control system?' Identify all documents that support this claim."

¶ 6    Thereafter, the plaintiffs failed to respond to the interrogatories and Audi successfully moved the circuit court to compel answers from the plaintiffs. On March 8, 2005, the plaintiffs filed responses to Audi's interrogatories. However, on April 25, 2005, the circuit court ordered the plaintiffs to provide further answers to specific interrogatories, including interrogatory number 25. On May 5, 2005, the plaintiffs responded to Audi's interrogatories by attesting:

> "1. Claim withdrawn relative to *lever and cable system*.
>
> 2. We withdraw the *cruise control claim* that the same was defective." (Emphases added.)

Therefore, the only claims of defect in the sixth amended complaint that remained were the "brake and gas pedal placement and separation" and the "shift lock system."

¶ 7    On February 26, 2009, in an order addressing the plaintiffs' motion for class certification to include residents from six other states besides Illinois, the circuit court granted class certification to only original Illinois purchasers of 1984 through 1986 Audi 5000 vehicles with automatic transmissions and denied the motion with regard to the inclusion of class members in California, Connecticut, Massachusetts, New Jersey, New York, and Washington. In the February 26, 2009 order, the circuit court found that "central to any final determination" were the questions of whether there was a defect in the Audi 5000 class vehicles, whether Audi made misrepresentations regarding that defect, and whether the purchasers suffered financial loss as a result.

¶ 8    On December 15, 2009, the plaintiffs served a "request to produce" upon Audi, asking for the production of materials relating to the "throttle control electronics, including cruise control," in the Audi 5000 models that were the subject of the instant class action. In response, Audi filed a motion to quash, alleging that the materials sought were either redundant of prior requests that Audi had already produced to the plaintiffs or concerned discovery that could have been sought long ago. Thereafter, the plaintiffs requested to supplement their prior answers to Audi's interrogatories by identifying expert witnesses who had not been previously deposed. On January 20, 2010, Audi filed a motion for a protective order, objecting to such late discovery and disclosures on the basis that the time for written discovery had passed. The motion for a protective order further asserted that the plaintiffs' requests to produce documents and the purported testimony of the plaintiffs' expert witnesses improperly pertained to the cruise control claim of defect that had previously been withdrawn and abandoned by the plaintiffs. On February 22, 2010, the circuit court[3] granted Audi's motion for a protective order, barring the plaintiffs from requesting additional documents not previously requested. The circuit court found that the plaintiffs had previously abandoned the issue of whether a

---

[3]Judge James Epstein presided over the proceedings relating to these discovery disputes.

defect existed in the cruise control system of the class vehicles and limited the plaintiffs' discovery request accordingly.

¶ 9    On March 18, 2010, the circuit court denied the plaintiffs' motion to reconsider the court's February 22, 2010 ruling. On May 20, 2010, the plaintiffs again sought reconsideration or modification of the February 22, 2010 ruling, arguing that it was their position that the defect in the Audi 5000 vehicles was the sudden unintended acceleration "that was caused by a failure to adequately protect against internal electronic interference," that they were "not seeking to blame the cruise control [system] to be the basic cause of the electronics' malfunction resulting in the stimulation of the [electronically controlled] throttle," and that an electronics phenomenon called "electromagnetic interference" could occur to "trick this cruise control component into pulling [the] throttle wide open without regard to whether the system was engaged." On August 19, 2010, the circuit court denied the plaintiffs' motion to modify or reconsider the February 22, 2010 ruling, finding that the plaintiffs were improperly seeking to revive the cruise control claim, which they had previously abandoned in 2005. The circuit court specifically found:

> "For purposes of plaintiffs' motion, the court need not decide whether their [2005] answer to [Audi's] [interrogatory number 25] constitutes a judicial admission. As the order and transcript of the February 22, 2010 hearing make clear, the court never ruled that plaintiffs' abandonment of the cruise control claim was a judicial admission. Rather, the court simply found that plaintiffs abandoned that claim. *** The reason for that ruling is manifest. This litigation has dragged on for decades. It has been characterized by innumerable discovery disputes, disregarded agreements, and ignored discovery orders, much of it due to plaintiffs' vigorous, if not always successful, positions in this case. More than five years ago, in a sworn statement, plaintiffs stated that they were withdrawing the cruise control claim. Since that time, [Audi] has relied on that statement, as has the court in attempting to guide this matter to resolution. Plaintiffs now seek to resurrect the long dead claim on the assertion that their counsel made a strategic error. Plaintiffs have presented no new evidence or law requiring the court to reconsider its ruling. The process of this litigation has been, in effect, one step forward followed by two steps back. After giving no indication for years of a desire to resurrect their abandoned claim, plaintiffs' eleventh hour attempt to do so now is unreasonable. As the court has previously stated, after nearly a generation of litigation, it is time for the parties to this case to have their day in court and resolve this matter."

¶ 10    On August 27, 2010, Audi filed a motion for summary judgment on the grounds that, because the cruise control claim has been abandoned by the plaintiffs, and the discovery testimony of the plaintiffs' experts focused solely on a defect caused by electromagnetic interference in the cruise control system, the plaintiffs could not prevail on their claims that a defect in the Audi 5000 existed or that Audi fraudulently concealed any defect.

¶ 11    On July 6, 2011, the plaintiffs filed a response to Audi's motion for summary judgment, asserting that they need not prove a defect in order to prevail on the merits of their consumer fraud claim and that they need only prove that the Audi 5000 vehicles had a propensity to unintentionally accelerate. In combination with the plaintiffs' written response to Audi's motion for summary judgment, the plaintiffs also filed a cross-motion for summary judgment, alleging that the Audi 5000 class vehicles had a disproportionate propensity to suddenly accelerate, that Audi concealed the scope of the unintended acceleration problem in the class

vehicles, and that Audi lied to the public. The plaintiffs also alleged that there was no proof that driver errors in misapplying the pedals were responsible for any sudden and unintended acceleration. Attached to the plaintiffs' cross-motion for summary judgment were the affidavits of the plaintiffs' expert witnesses–Samuel Sero (Sero) and Dr. William Berg (Dr. Berg). Sero, a professional engineer, theorized that unintended acceleration results when electromagnetic interference (EMI) causes a signal to be sent by the electronic control unit on the cruise control system to open the throttle (which is controlled by "sensitive electronics") to the wide-open position without driver input. The wide-open throttle causes the car to suddenly and rapidly accelerate. Sero did not criticize the lever and cable linkage to the transmission shift lever. Dr. Berg, who holds a Ph.D. in civil engineering, attested in his affidavit that he reviewed scientific literature assessing pedal errors in motor vehicles, including alleged pedal misapplications in the context of sudden acceleration. Dr. Berg stated that there was "no reliable scientific or empirical data to support the hypothesis that drivers make an error by putting a foot on the wrong pedal when they shift, then push the accelerator pedal to the floor full throttle, fail to recognize the mistake, and persist until the vehicle crashes." Dr. Berg had no opinion as to whether pedal placement was a cause of unintended acceleration.

¶ 12 On August 3, 2011, Audi filed a motion to strike Sero's and Dr. Berg's affidavits and to bar their testimony (motion to strike affidavits). One of the bases for the motion to strike affidavits was relevance–that is, the circuit court had previously ruled that the plaintiffs had abandoned the theory that the cruise control system was defective. Audi alleged that because the plaintiffs had abandoned the cruise control theory of defect, they were barred from raising any claim regarding alleged defects in the cruise control system. A second basis for the motion to strike affidavits was that the opinions of Sero and Dr. Berg should be excluded under the *Frye/Donaldson* test for admissibility of expert testimony. See *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63 (2002).

¶ 13 On September 2, 2011, the plaintiffs filed a reply in support of their cross-motion for summary judgment and a response to Audi's motion to strike affidavits. The plaintiffs also submitted additional affidavits from Sero and Dr. Berg in which they addressed criticisms of their opinions that were made by Audi's experts.

¶ 14 On January 20, 2012, the circuit court ordered an evidentiary hearing to determine whether the testimony of Sero and Dr. Berg was relevant to the issues in the case and whether it was admissible under *Frye/Donaldson*.

¶ 15 On February 2, 2012, while the parties' cross-motions for summary judgment were under advisement, the plaintiffs filed a motion for leave to file a seventh amended complaint. The proposed seventh amended complaint proposed to add two new theories of recovery (common law negligence and common law fraud); proposed to amend the Consumer Fraud Act claim by deleting allegations relating to any specific defect and only alleging that there were "unusually high incidences" of unintended acceleration that Audi fraudulently and deceptively concealed from the public; and proposed to expand the class beyond Illinois residents by seeking to certify a nationwide class. On March 21, 2012, following a hearing, the circuit court denied the plaintiffs leave to file a seventh amended complaint.

¶ 16 Beginning in April 2012, over several dates, a *Frye/Donaldson* hearing was held during which the plaintiffs' expert witnesses (Sero and Dr. Berg) and Audi's expert witnesses (Eckart Donner and Robert Lange) testified.

¶ 17        On February 7, 2013, in granting Audi's motion to strike affidavits, the circuit court held that the opinions of both Sero and Dr. Berg were not admissible expert testimony by finding, *inter alia*, that they had failed to actually employ the scientific methods and analysis upon which their expert opinions were based. Specifically, the circuit court found that Sero's opinion that EMI could cause unintended acceleration in any automobile was new and novel and that the plaintiffs presented no evidence that Sero's theory was generally accepted in the relevant scientific community. The circuit court found that Sero failed to demonstrate that he had acquired the minimum requisite knowledge, skill, or experience with respect to the Audi 5000 class vehicle; its cruise control system's wiring of current flow; its safety shutoffs; and the effect of braking by the driver that was fundamentally necessary for him to be able to develop meaningful opinions. The court noted that Sero had conceded at the *Frye*/*Donaldson* hearing that he never examined the Audi 5000 class vehicle and that he never tested it for susceptibility to EMI-induced throttle opening. The circuit court also found that Dr. Berg failed to do anything to educate himself concerning the specifics of the vehicles at issue, failed to independently gather information for this case, failed to gather all of the relevant scientific literature, failed to consider all of the relevant published literature offering scientific or empirical evidence on the issue of driver error, and ignored literature that provided scientific and empirical evidence that driver error was a significant factor in causing sudden unintended acceleration incidents. In granting Audi's motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment, the circuit court found that, *even if* the opinions of Sero and Dr. Berg survived the *Frye*/*Donaldson* challenge, the plaintiffs were still not entitled to summary judgment. The circuit court rejected the plaintiffs' argument that they need not show a *defect* in the class vehicles but only that the class vehicles had a *tendency* to accelerate in a sudden and unintended manner. The court found that the plaintiffs' theory of the case, as set forth in the sixth amended complaint, had always been that Audi withheld known information about *specific defects* in the Audi 5000 class vehicles and that the plaintiffs were not entitled to summary judgment on a new theory that had not been pled. In granting Audi's motion for summary judgment, the circuit court found that no genuine issues of material fact existed regarding any of the claims of defects alleged in the sixth amended complaint. Specifically, the court found that Sero's opinion, which claimed the existence of a defect in the class vehicles, was problematic because it alleged a theory of defect in the electronically controlled throttle system that had not been pled in the sixth amended complaint; it was not supported by facts admissible in evidence; and it attempted to resurrect the abandoned theory of a defect in the cruise control system in violation of previous court orders.

¶ 18        On March 8, 2013, the plaintiffs filed a timely notice of appeal.

¶ 19                                                    ANALYSIS

¶ 20        We determine the following issues on appeal: (1) whether the circuit court, in its February 22, 2010 discovery order, erred in limiting the plaintiffs' discovery request by ruling that they had previously abandoned the cruise control theory of defect in the class vehicles; (2) whether the circuit court erred in denying the plaintiffs leave to file a seventh amended complaint; (3) whether the circuit court erred in granting summary judgment in favor of Audi and against the plaintiffs; and (4) whether the circuit court erred in finding that Audi need not respond to certain discovery requests by the plaintiffs on the basis that those requests pertained to privileged documents.

¶ 21 As a preliminary matter, we note that the plaintiffs' 56-page opening brief before this court exceeds the 50-page limit and fails to include a certificate of compliance, in flagrant violation of Illinois Supreme Court Rules 341(b) and (c) (eff. Feb. 6, 2013). There is no indication that the plaintiffs had asked this court for permission to file an extended brief, and this court has certainly not given them leave to do so. Specifically, the plaintiffs' brief starts subsection "B" of section V on page 49, one page before the page limit, as well as asserts an entirely new argument (section VII) four pages past the page limit on page 54 of the brief. In its response brief, Audi raises no objection to the plaintiffs' page-limit violation. We caution the plaintiffs that our supreme court rules governing appellate practice are mandatory, not merely suggestive. See *Travaglini v. Ingalls Health System*, 396 Ill. App. 3d 387, 405 (2009). If an appellant's brief violates the supreme court rules, this court has the discretion to dismiss the appeal. *In re Jacorey S.*, 2012 IL App (1st) 113427, ¶ 17. However, we note that the rules are an admonishment to the parties and not a limitation upon the jurisdiction of this court. *Id.* While this court has the options of striking the excess pages or dismissing the appeal for failure to comply with the supreme court rules, in the interest of bringing this long-drawn-out case to a clear and conclusive end, we will not exercise our option to sanction the plaintiffs for disregarding the supreme court rules. Thus, notwithstanding the violation of the rules, we will address the merits of the appeal.

¶ 22 Turning to the merits of the appeal, we first determine whether the circuit court, in its February 22, 2010 discovery order, erred in limiting the plaintiffs' discovery request by ruling that they had previously abandoned the cruise control system theory of defect in the class vehicles. We review this issue under an abuse of discretion standard. See *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 366 (1989) (the rules governing discovery give great discretion to the trial court, and its exercise of discretion will not be disturbed on appeal absent an abuse of discretion).

¶ 23 The plaintiffs' 2003 sixth amended complaint alleged violations under the Consumer Fraud Act, claiming that Audi knowingly concealed from the public information that the Audi 5000 class vehicles were defective in design or production and that the defects included the lever and cable system; the brake and gas pedal placement and separation; the cruise control system; and the shift lock system. In May 2005, the plaintiffs responded to Audi's interrogatories, stating: "1. Claim withdrawn relative to lever and cable system. 2. We withdraw the cruise control claim that the same was defective." Over four years later, in December 2009, the plaintiffs served a "request to produce" upon Audi, asking for the production of materials relating to the "throttle control electronics, including cruise control" in the Audi 5000 class vehicles. In response, Audi filed a motion to quash, alleging that the materials sought by the plaintiffs were either redundant of prior requests that Audi had already produced to the plaintiffs or concerned discovery that could have been sought long ago. Thereafter, the plaintiffs requested to supplement their prior answers to Audi's interrogatories by identifying expert witnesses who had not been previously deposed. In January 2010, Audi filed a motion for a protective order, objecting to such late discovery and disclosures on the basis that the time for written discovery had passed. The motion for a protective order also asserted that the plaintiffs' request to produce documents, and the purported testimony of the plaintiffs' expert witnesses, improperly pertained to the cruise control claim of defect that had previously been withdrawn and abandoned by the plaintiffs in 2005. On February 22, 2010, the circuit court granted Audi's motion for a protective order, barring the plaintiffs from

requesting additional documents not previously requested. The court found that the plaintiffs had previously abandoned the issue of whether a defect existed in the cruise control system of the class vehicles and limited the plaintiffs' discovery request accordingly by prohibiting the plaintiffs from "disclosing experts on the abandoned issue of cruise control." On March 18, 2010 and August 19, 2010, the circuit court twice denied the plaintiffs' motion to reconsider or modify the February 22, 2010 ruling, finding that the plaintiffs were improperly seeking to revive the cruise control claim that they had abandoned in 2005.

¶ 24    On appeal, the plaintiffs argue that the circuit court erred during discovery in finding that they had abandoned their claim of defect relating to the cruise control system, as well as in limiting their discovery request by barring "any testimony at all relative to any defect that might implicate the cruise control system." The plaintiffs contend that it was "never clear in the first instance exactly what claim [they] were abandoning," that the court's desire to guide the case toward a resolution should not have trumped fundamental considerations of fairness, and that the court failed to make a finding that Audi would have been prejudiced had they been allowed to "resurrect" their cruise control claim of defect. The plaintiffs further make a number of arguments emphasizing that the court's ruling, in effect, improperly treated their "withdrawal" of the cruise control claim as a "judicial admission."

¶ 25    Audi counters that the circuit court did not abuse its discretion in declining to allow the plaintiffs, in 2010, to "undo their 2005 sworn withdrawal" of the cruise control claim of defect, where the plaintiffs fail to cite any legal authority to support a contrary position. Audi argues that the plaintiffs' arguments regarding "judicial admission" are moot, where the circuit court never made a determination as to whether the plaintiffs' 2005 answers to Audi's interrogatories constituted a judicial admission. Audi contends that the court correctly barred the plaintiffs from seeking additional documents and disclosing experts on the abandoned claim. Audi notes that the court's February 22, 2010 order granting its motion for a protective order was proper in light of the history of the litigation and past discovery abuses by the plaintiffs. Audi further argues that the plaintiffs' attempt to revive the cruise control theory of defect, five years after they had abandoned it, was properly rejected by the court.

¶ 26    We find that the circuit court did not abuse its discretion on February 22, 2010 in granting Audi's motion for a protective order and in finding that the plaintiffs had previously abandoned the issue of an alleged defect in the class vehicles' cruise control system such that they were prohibited from "disclosing experts on the abandoned issue of cruise control." First, we find the plaintiffs' argument pertaining to "judicial admission" to be irrelevant, where the circuit court never made a determination as to whether the plaintiffs' 2005 answers to Audi's interrogatories–in which they withdrew their cruise control claim of defect–constituted a "judicial admission." Indeed, in denying the plaintiffs' motion to reconsider or modify the February 22, 2010 ruling, the court's August 19, 2010 order specifically noted that "[a]s the order and transcript of the February 22, 2010 hearing make clear, the court never ruled that plaintiffs' abandonment of the cruise control claim was a judicial admission. Rather, the court simply found that plaintiffs abandoned that claim." Thus, the issue of "judicial admission" is not relevant and is not before us, in spite of the plaintiffs' effort to make it a *bona fide* issue on appeal.

¶ 27    Second, we find that the circuit court did not abuse its discretion in granting Audi's motion for a protective order to bar the plaintiffs from seeking additional documents and in prohibiting the plaintiffs from "disclosing experts on the abandoned issue of cruise control." At the time

the plaintiffs sought additional documents from Audi and requested to supplement their answers to Audi's interrogatories in 2009, almost five years had passed since the plaintiffs had withdrawn their cruise control theory of defect in May 2005. During the intervening years, Audi had relied on the plaintiffs' 2005 withdrawal of the cruise control theory of defect, and the case had proceeded with the understanding that the cruise control systems of the Audi 5000 class vehicles were no longer at issue. In attempting to guide this protracted litigation toward resolution, the circuit court had also relied on the plaintiffs' 2005 withdrawal of the cruise control theory of defect. In its August 19, 2010 order, the circuit court noted that "the thrust of the plaintiffs' argument [was] that after decades of litigation, they [had] discovered that [EMI[4]] caused the unintended accelerations in the [class vehicles] and although the cruise control systems were not the root cause of [the EMI] their design was part of the problem." The circuit court thus found the plaintiffs' "eleventh hour" attempt to resurrect the abandoned cruise control claim to be unreasonable, particularly in light of the lengthy history of the litigation that had been characterized by "innumerable discovery disputes, disregarded agreements, and ignored discovery orders." Based on these circumstances, we cannot say that the circuit court's ruling in prohibiting the plaintiffs from "disclosing experts on the abandoned issue of cruise control," or in barring the plaintiffs from seeking additional documents that had not been previously requested, was such that no reasonable person would adopt the same view. See *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005) (a court abuses its discretion only where its ruling is arbitrary, fanciful, or where no reasonable person would adopt the court's view). Moreover, the plaintiffs fail to cite any legal authority on appeal to support their argument that the court erred in its February 22, 2010 ruling. Therefore, we hold that the circuit court's discovery rulings in its February 22, 2010 order, as well as its March 18, 2010 and August 19, 2010 orders denying the plaintiffs' motion to reconsider or modify the February 22, 2010 rulings, were not an abuse of discretion.

¶ 28        We next determine whether the circuit court erred in denying the plaintiffs leave to file a seventh amended complaint, which we review under an abuse of discretion standard. See *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 611 (1999).

¶ 29        The plaintiffs argue that the circuit court erred in denying them leave to file a seventh amended complaint, where the proposed pleading removed the "surplus allegations" that *specific defects* were the cause of unintended acceleration in the class vehicles; focused on Audi's concealment of the class vehicles' *propensity* for unintended acceleration; and added negligence claims. Specifically, they contend that because nothing in the proposed amendment would have surprised or prejudiced Audi, the circuit court abused its discretion in denying them leave to file a seventh amended complaint.

¶ 30        Audi counters that the circuit court did not abuse its discretion in denying the plaintiffs leave to file a seventh amended complaint to add new theories and new parties, where 25 years had passed since the filing of the original complaint and the parties' cross-motions for summary judgment were already pending before the circuit court. Audi specifically argues that the proposed seventh amended complaint did not cure a defective pleading; that the plaintiffs had many earlier opportunities to amend the complaint over the 25 years of litigation; that the proposed amendment was untimely; and that it would prejudice Audi.

---

[4]As noted, "EMI" stands for electromagnetic interference.

¶ 31    To determine whether the circuit court abused its discretion in denying a party leave to file an amended complaint, four factors are considered: (1) whether the proposed amendment would cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely; and (4) whether the moving party had previous opportunities to amend. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 75 (2010); *Fieldcrest Builders, Inc.*, 311 Ill. App. 3d at 611.

¶ 32    In the case at bar, on February 2, 2012, while the parties' cross-motions for summary judgment were under consideration, the plaintiffs filed a motion for leave to file a seventh amended complaint. The proposed seventh amended complaint proposed to add two new theories of recovery (common law negligence and common law fraud); proposed to amend the Consumer Fraud Act claim by deleting allegations relating to any specific defect and only alleging that there were "unusually high incidences" of unintended acceleration that Audi fraudulently and deceptively concealed from the public; and proposed to expand the class beyond Illinois residents by seeking to certify a nationwide class. On March 21, 2012, following a hearing, the circuit court denied plaintiffs leave to file a seventh amended complaint.

¶ 33    We find that the circuit court did not abuse its discretion in denying the plaintiffs leave to file a seventh amended complaint. Our review of the record and the proposed seventh amended complaint leads us to conclude that none of the four factors favored granting the plaintiffs leave to file the proposed pleading. First, the proposed seventh amended complaint did not cure a defective pleading, where the allegations in the sixth amended complaint were not defective and the pleading was filed on remand after this court's 1997 decision in *Perona*, which held that the plaintiffs had "adequately alleged consumer fraud violation based on material omission as to the sudden acceleration problem" in the Audi 5000 automobiles with model years 1984 through 1986. Rather, the proposed seventh amended complaint added new theories of recovery and sought to expand the class. Second, the proposed amendment would prejudice Audi. As the circuit court correctly found, "[c]ommon law fraud just by its very nature requires more proof than consumer fraud" and Audi "would have to do a whole lot different to defend themselves against a common law fraud count." The court also correctly found that "[c]ertainly misrepresentation and negligence have different elements than consumer fraud *** so what we would have to do is reopen discovery and discovery written fact *** is now closed. *** We would have to reopen discovery on the new theories *** [and] on the motion to certify a class." The plaintiffs argue on appeal that Audi would not be prejudiced by the filing of the seventh amended complaint because the proposed pleading deleted "surplus allegations" that specific defects were the cause of unintended acceleration in the class vehicles and any additional proof required to support a common law fraud claim would impose a burden on them, not Audi. We reject this contention. The plaintiffs' argument fails to take into account that Audi would need to *defend* itself against the new common law theories of recovery and against an expanded class of plaintiffs, and that discovery would have to be reopened to accommodate these new theories and a motion to certify a larger class. See *Trident Industrial Products Corp. v. American National Bank & Trust Co.*, 149 Ill. App. 3d 857, 866-67 (1986) (finding no abuse of discretion in the court's denial of plaintiff's motion to supplement complaint after discovery had closed, where it sought to add claims that would require additional discovery). Third, the proposed seventh amended complaint was not timely,

where the plaintiffs asked the court for leave to file it almost *nine* years after the sixth amended complaint was filed in 2003 and the parties' cross-motions for summary judgment were already pending before the court. As the circuit court correctly noted, the case was already 25 years old at the time the plaintiffs sought leave to amend the pleading and they had pointed to "no new facts that triggered this request to file a seventh amended complaint." See *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 526 (2007) (proposed pleading amendment untimely where "discovery as to the parties themselves was closed five months earlier"). Fourth, during the course of the 25-year history of the case, the plaintiffs had numerous previous opportunities to amend the complaint. As noted, the record does not reveal the emergence of any new facts that would have prompted the plaintiffs to seek to file a seventh amended complaint *nine* years after the sixth amended complaint was filed in 2003. Rather, the plaintiffs could have pled the proposed new common law theories of recovery earlier. See *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 87 (2011) (no abuse of discretion where the plaintiff's complaint was filed in 2003 and five prior amendments had been allowed by the trial court over the course of more than six years, during which all of the facts and circumstances that the plaintiffs sought to add to a proposed sixth amended complaint could and should have been discovered and included). When thoroughly analyzed, the plaintiffs' request to amend the complaint a seventh time more than two decades after it was initially filed would have been a significant game changer for Audi had it been allowed. Accordingly, because the four factors did not weigh in favor of the plaintiffs, we hold that the circuit court did not abuse its discretion in denying them leave to file a seventh amended complaint.

¶ 34 We next determine whether the circuit court erred in granting summary judgment in favor of Audi and against the plaintiffs.

¶ 35 On February 7, 2013, following a *Frye/Donaldson* hearing, the circuit court granted Audi's motion to strike the affidavits of Sero and Dr. Berg, finding that they had failed to actually employ the scientific methods and analysis upon which their expert opinions were based, in violation of *Frye/Donaldson*. The circuit court found that, *even if* Sero's and Dr. Berg's opinions survived the *Frye/Donaldson* challenge, Audi was still entitled to the entry of summary judgment in its favor. In denying the plaintiffs' cross-motion for summary judgment, the court rejected their argument that they need not show a *defect* in the class vehicles but only that the class vehicles had a *tendency* to accelerate in a sudden and unintended manner. The court found that the plaintiffs' theory of the case, as set forth in the sixth amended complaint, had already been that Audi withheld known information about *specific defects* in the Audi 5000 class vehicles and that the plaintiffs were not entitled to summary judgment on a new theory that had not been pled. In granting Audi's motion for summary judgment, the circuit court found that no genuine issues of material fact existed regarding any of the claims of defects alleged in the sixth amended complaint. Specifically, the court found that Sero's opinion, which claimed the existence of a defect in the class vehicles, was problematic because it alleged a theory of defect in the electronically controlled throttle system that had not been pled in the sixth amended complaint, it was not supported by facts admissible in evidence, and it attempted to resurrect the abandoned theory of a defect in the cruise control system in violation of previous court orders.

¶ 36 Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c)

- 12 -

(West 2012). In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists" that would preclude the entry of judgment as a matter of law. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). When parties file cross-motions for summary judgment, as was the case here, they agree that only a question of law is involved and invite the court to decide the issues based on the record. See *Pielet*, 2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.* A reviewing court may affirm a circuit court's grant of summary judgment on any basis apparent in the record, regardless of whether the circuit court relied on that basis or whether the court's reasoning was correct. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006). Summary judgment rulings are reviewed *de novo* on appeal. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45 (2008).

¶ 37 In seeking entry of summary judgment in their favor,[5] the plaintiffs argued that they need not prove a defect in order to prevail on the merits of their consumer fraud claim and that they need only prove that Audi 5000 vehicles had a *propensity* to unintentionally accelerate. The plaintiffs also argued that Audi 5000 class vehicles had a disproportionate propensity to suddenly accelerate, that Audi concealed the scope of the unintended acceleration problem in the class vehicles, and that Audi lied to the public. The plaintiffs also alleged that there was no proof that driver error in misapplying the pedals was responsible for any sudden and unintended acceleration. On appeal, the plaintiffs first argue that they were neither required to identify or prove the existence of a "specific defect," where the specific cause of unintended acceleration in the class vehicles was not a necessary element of their Consumer Fraud Act claim. They argue that any allegations of specific defects in their sixth amended complaint should be treated as "surplusage." Rather, they contend that they need only show that the class vehicles had a propensity to unintentionally accelerate, as shown by the documents attached to their response to Audi's motion for summary judgment.

¶ 38 Audi counters that the plaintiffs improperly sought to shift their claim from the one pled in the sixth amended complaint alleging concealment of specified defects to a new theory that had never been pled–that is, that they only needed to prove the class vehicles had a propensity to unintentionally accelerate.

¶ 39 The elements of a claim under the Consumer Fraud Act are: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). Plaintiff's reliance is not an element of statutory consumer fraud, but a valid claim must show that the consumer fraud proximately caused the plaintiff's injury. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). "Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Id.*

---

[5]The plaintiffs' July 6, 2011 combined response to Audi's motion for summary judgment and cross-motion for summary judgment does not delineate where the response ends and the cross-motion begins. The cross-motion also is unclear because it does not identify any undisputed facts.

¶ 40    We find that the circuit court correctly held that the plaintiffs were not entitled to the entry of summary judgment in their favor. The sixth amended complaint alleged specific defects in the design or production of the class vehicles as the bases for the incidents of unintended acceleration. It further pled that Audi failed to disclose those defects, but made no mention that the class vehicles had a *tendency* to unintentionally accelerate. Indeed, it was the allegations concerning *defects*, as set forth in the fifth amended complaint and reiterated in the sixth amended complaint, that this court in *Perona* found sufficient to state a cause of action:

> "In this case, the complaint alleged at least one specific defect ***. The complaint further alleged that [Audi] knew of the defect, yet fraudulently and deceptively withheld that information from the purchasing public." *Perona*, 292 Ill. App. 3d at 67.

Further, on February 26, 2009, in granting class certification to only original Illinois purchasers of 1984 to 1986 Audi 5000 vehicles, the circuit court found that questions of whether there was a *defect* in the Audi 5000 class vehicles, and whether Audi made misrepresentations regarding that *defect*, would be "central to any final determination." Because the plaintiffs' theory of the case, as pled in the sixth amended complaint, had always been that Audi withheld known information about *specific defects* in the Audi 5000 class vehicles, the plaintiffs were not entitled to summary judgment on a new theory–the *tendency* or *propensity* of unintended acceleration–that had never been pled. See *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994) ("A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. *** In ruling on a motion for summary judgment, the court looks to the pleadings to determine the issues in controversy."); *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675, 679-80 (2005).

¶ 41    In fact, even the plaintiffs themselves recognize that a claim of deceptive concealment of defects was different from a claim of deceptive concealment of a known propensity of unintended acceleration, as evidenced by the plaintiffs' request for leave to file a seventh amended complaint to add, *inter alia*, a new claim for common law negligence alleging that Audi "carelessly and negligently concealed from the purchasing public that there were substantial complaints of unintended acceleration." We find that the plaintiffs could not seek to recover on summary judgment on a theory that had never been a part of a validly filed complaint, particularly where this case had been pending for over a quarter of a century. The plaintiffs cite a number of cases which they claim stand for the proposition that they were not required to allege a defect in order to state a claim under the Consumer Fraud Act. See *Connick*, 174 Ill. 2d 482; *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795 (2006); *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139 (2001); *Perona*, 292 Ill. App. 3d 59. We find the plaintiffs' reliance on these cases to be misplaced. All of these cases involve either the appellate or supreme court review of a circuit court order dismissing the case under section 2-615 of the Illinois Code of Civil Procedure. See 735 ILCS 5/2-615 (West 2012). Unlike the plaintiffs' cited cases, the case at bar is at the summary judgment stage and thus, is in a different procedural posture than cases involving section 2-615 dismissals. Likewise, we reject the plaintiffs' argument, citing *Taylor v. Hughes*, 17 Ill. App. 2d 138, 146 (1958), that any allegations of specific defects in their sixth amended complaint should be treated as "surplusage." Unlike *Taylor*, in which the circuit court found allegations regarding contributory negligence to be "surplusage" because dramshop cases were not based on the theory of negligence, the circuit court in the case at bar found, and we agree, that the issue of

- 14 -

specific defects was "central to any final determination" of the case. Thus, we reject the plaintiffs' position that they need only show that the class vehicles had a *propensity* to unintentionally accelerate.

¶ 42    Even if this court were to consider this new theory alleging only a *tendency* or *propensity* of unintended acceleration the plaintiffs would still not be entitled to relief on summary judgment. Exhibits submitted by Audi in opposition to the plaintiffs' cross-motion for summary judgment raised a genuine issue of material fact as to whether the class vehicle had a *propensity* to unintentionally accelerate and whether Audi concealed from the public complaints made by drivers of the class vehicles concerning the alleged tendency of Audi 5000 vehicles to experience unintended acceleration. Specifically, Robert Cameron (Cameron), as general manager and product liaison of Volkswagen of America, Inc., attested in a "declaration" that Audi's investigations into the occurrence of "unintended acceleration" in the class vehicles "systematically ruled out any and all causes for such complaints other than pedal misapplication, i.e., drivers stepping on the accelerator in the mistaken belief that it was the brake." Cameron's declaration further revealed that these results and conclusions were communicated to the public; that Audi "at all relevant times publicly acknowledged that they had received complaints of unintended acceleration related to Audi 5000 [vehicles]"; that Audi officially informed the public as early as 1982 when they issued a safety-related recall of all 1978 through 1982 model year Audi 5000s; that a second safety-related recall was issued by Audi in 1983; and that Audi participated extensively in the field investigations which led to these recalls. A declaration by Daniel Anderson (Anderson), a former employee who performed field inspections of Audi 5000 vehicles that had reportedly accelerated despite the fact that the drivers had not stepped on the gas pedal, revealed that he found no occurrences of unintended acceleration in the vehicles during any of his field tests. Anderson stated that in 1982, Audi conducted a recall campaign "to make sure that the floor mat [of the class vehicles] could not be dislodged and cause a sticking accelerator pedal." He averred that as he continued his investigations, he discovered that the pedal height between the brake and accelerator were of very similar height and reported that this might explain why drivers reported their vehicles were accelerating despite their belief that their foot was on the brake pedal. As a result, Audi conducted a second recall in 1983 to make certain that all pedal heights were different and to remove this as a source of confusion. Anderson reported that he also field tested about 235 class vehicles of which drivers had complained of incidents of unintended acceleration and that he discovered that a vast majority of unintended acceleration incidents were likely to have been caused by pedal confusion–that is, there was evidence suggesting that drivers were inadvertently depressing the gas pedal while under the mistaken belief that their foot was on the brake pedal. Based on the foregoing, we find that the circuit court properly held that the plaintiffs were not entitled to the entry of summary judgment in their favor.

¶ 43    With respect to Audi's motion for summary judgment, we find that the circuit court correctly held that Audi was entitled to summary judgment in its favor. Audi's motion for summary judgment was premised upon the theory that the plaintiffs had adduced no proof or evidence that any of the pleaded defects existed. Audi also argued that since the plaintiffs had abandoned the theory of defects in the cruise control system, any evidence related to such defects was irrelevant.

¶ 44    As discussed, on February 7, 2013, following a *Frye/Donaldson* hearing, the circuit court granted Audi's motion to strike the affidavits of the plaintiffs' expert witnesses, Sero and Dr.

Berg, by finding that they had failed to actually employ the scientific methods and analysis upon which their expert opinions were based, in violation of *Frye/Donaldson*. The circuit court found that, *even if* Sero's and Dr. Berg's opinions survived the *Frye/Donaldson* challenge, Audi was still entitled to the entry of summary judgment in its favor. In granting Audi's motion for summary judgment, the circuit court found that no genuine issues of material fact existed regarding any of the claims of defect alleged in the sixth amended complaint. Specifically, the circuit court found that the opinion of Sero, who claimed the existence of a defect in the class vehicles, was problematic because it alleged a theory of defect in the "electronically-control throttle system" that had not been pled in the sixth amended complaint, it was not supported by facts admissible in evidence, and it attempted to resurrect the plaintiffs' previously abandoned theory of a defect in the cruise control system.

¶ 45    We need not address whether the circuit court properly struck Sero's and Dr. Berg's affidavits under the *Frye/Donaldson* standard, [6] because, *even if* Sero's and Dr. Berg's opinions survived the *Frye/Donaldson* challenge, Audi was still entitled to the entry of summary judgment in its favor. As noted, the plaintiffs' sixth amended complaint alleged the following four defects in the Audi 5000 class vehicles: (1) the lever and cable system linking the transmission shift lever; (2) the brake and gas pedal placement and separation; (3) the cruise control system; and (4) the shift lock system. Because the plaintiffs, in May 2005, had withdrawn and abandoned any claims of defects in the lever and cable system linking the transmission shift lever, as well as defects in the cruise control system, we find that the circuit court properly granted summary judgment in favor of Audi on those claims.

¶ 46    We further find that the plaintiffs had presented no evidence to raise a genuine issue of material fact that there was a defect in the arrangement of the gas and brake pedals. Indeed, Sero testified in his deposition that he had found no causative defect in the class vehicles' pedal arrangement. Dr. Berg also testified in his deposition that he was "not offering any opinion in this case that pedal configuration in the [class vehicles] was a significant factor in the occurrence of pedal error on the part of the drivers." Thus, we find that no genuine issues of material fact existed regarding the claim of a specific defect in the brake and gas pedal placement and separation. Likewise, the plaintiffs had presented no evidence to support their claim of defect in the class vehicles' shift lock system. Therefore, we find that the circuit court properly granted summary judgment in favor of Audi on these claims.

¶ 47    Because the four claims of defects alleged in the sixth amended complaint could not survive summary judgment, the only remaining claim of the existence of an alleged defect in the class vehicles could be found in Sero's opinion. As discussed, Sero, an engineer, theorized that unintended acceleration in the class vehicles results when EMI[7] causes a signal to be sent by the electronic control unit on the cruise control system to open the throttle (which is controlled by "sensitive electronics") to the wide-open position without driver input. He opined that the wide-open throttle causes the car to suddenly and rapidly accelerate. We find

---

[6]The *Frye/Donaldson* test governs the admission of expert testimony, which dictates that scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs." (Internal quotation marks omitted.) *In re Commitment of Simons*, 213 Ill. 2d 523, 529-30 (2004) (quoting *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)).

[7]As previously defined, EMI stands for "electromagnetic interference."

Sero's opinions as to the existence of a defect in the class vehicles to be problematic for several reasons. First, we find that Sero's theory that the defect was located in the electronically controlled throttle system, had not been pled in the sixth amended complaint. It is interesting to note that the plaintiffs' proposed seventh amended complaint also did not allege this defect. As discussed, the plaintiffs could not recover on theories that had never been pled. See *Pagano*, 257 Ill. App. 3d at 911 ("A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. *** In ruling on [the] motion for summary judgment, the court looks to the pleadings to determine the issues in controversy.").

¶ 48    Second, Sero's opinion improperly attempts to resurrect the plaintiffs' abandoned theory of a defect in the cruise control system. As the circuit court noted, it is undisputed by the parties that there were only two intended ways to open a throttle (a mechanism by which the engine's power or speed is regulated): the first is for the driver to press on the accelerator, and the second is through the operation of the cruise control. Sero opined that, if a class vehicle is affected by EMI, the throttle would be sent a signal by the electronic control unit on the cruise control to open the cruise control system without driver input. Sero attested in his affidavit that the throttle cable is controlled by the cruise control system's electronic control unit. He also opined that any alleged random electromagnetic pulse must go through the electronic control unit on the cruise control system to open the throttle, which was controlled by "sensitive electronics." In Sero's deposition testimony, he acknowledged that the defect in the class vehicles was "something that causes an electrical signal in the cruise control system that causes *** the throttle cable to be pulled to full open acceleration." In his deposition, Dr. Berg also acknowledged that, aside from driver input, the cruise control system was the only mechanism in the class vehicles that could pull the throttle open to cause unintended acceleration. We find that a cruise control system that is activated without driver input and opens the throttle without driver input is, by its very nature, defective. Because the plaintiffs' claims concerning defects in the cruise control system were previously abandoned, Sero's opinion regarding the cruise control system was irrelevant and the plaintiffs had failed to establish that any defects existed in the class vehicles.

¶ 49    Third, we find that the circuit court correctly found that Sero's affidavit was not supported by facts admissible in evidence, and properly struck Sero's affidavit on this basis.

¶ 50    In Sero's affidavit, he opined that the design of the Audi 5000 class vehicles was defective because the electronically controlled throttle lacked adequate protection from the impact of EMI, which was "endemic to electronic systems" in causing unintended acceleration without driver input, and that Audi should have encased the cruise control system's electronic control unit in metal instead of plastic, as a key protective feature to protect the cruise control system against the effects of EMI.

¶ 51    "The sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191." *Woolums v. Huss*, 323 Ill. App. 3d 628, 635 (2001). Rule 191(a) provides in pertinent part the following:

> "Affidavits *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. July 1, 2002).

Moreover, "[w]hile an expert witness at trial may give opinion testimony without disclosing the facts underlying his opinion [citations], the same is not true of affidavits submitted in summary judgment proceedings." *Woolums*, 323 Ill. App. 3d at 636. "Affidavits in opposition to motions for summary judgment must consist of facts admissible in evidence as opposed to conclusions and conclusory matters may not be considered in opposition to motions for summary judgment." *Id.* Additionally, "[a]n expert's opinion is only as valid as the reasons for the opinion." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 400-01 (2007). Expert opinions based on guess, speculation, or conjecture as to what the witness believed might have happened are inadmissible. *Id.* at 401 (citing *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 886 (1999)).

¶ 52   The evidence shows that Audi, in support of its motion for summary judgment, presented the affidavit of Eckart Donner (Donner) as an expert witness. Donner, who has a master's degree in electrical engineering and had been employed by Audi since 1985, attested that the Audi 5000 class vehicles were neither equipped with an electronically controlled throttle nor an electronically controlled braking system. He stated that the technical features which Sero had described in his affidavit did not actually exist in the Audi 5000 class vehicles. Specifically, Donner attested that no Audi vehicle with an electronically controlled throttle was offered for sale in the United States until the 2000 model year Audi A6 and that the throttle in the Audi 5000 class vehicles was a "purely mechanical design." Donner further attested, and Sero agreed in his affidavit, that a purely mechanical system (as opposed to electronic systems), in which the accelerator pedal is linked to a cable physically connected to a throttle plate, "is by nature immune to EMI." Donner stated that, because the Audi 5000 class vehicles did not contain electronically controlled throttles, but instead had purely mechanical ones, they were thus immune to EMI.

¶ 53   We find that Sero's opinion was not supported by any facts admissible in evidence and that there was no genuine issue of material fact that the Audi 5000 class vehicles were not equipped with an electronically controlled throttle but with a purely mechanical system in which only physical cables and levers linked the gas pedal to the throttle plate. The plaintiffs had presented no evidence from Sero or anyone else to contradict Donner's statements that mechanically connected linkage was by its very nature immune to EMI. In his deposition, Sero admitted that he had never inspected an Audi 5000 class vehicle. The plaintiffs had presented no evidence, including photographs, documents, drawings, or tests, which could contradict the facts alleged in Donner's affidavit. While the plaintiffs argue that the circuit court's findings were erroneous because the court had impermissibly made credibility determinations in accepting Donner's opinion and in rejecting Sero's opinion at the summary judgment stage, we disagree. "When affidavits presented in support of summary judgment are not contradicted by counter-affidavits, they must be taken as true, even though the adverse party's pleadings allege contrary facts." *Safeway Insurance Co. v. Hister*, 304 Ill. App. 3d 687, 691 (1999). In the case at bar, on September 2, 2011, in response to Audi's motion to strike Sero's and Dr. Berg's affidavits, the plaintiffs had the opportunity to file additional affidavits from Sero and Dr. Berg in order to address the criticisms of their opinions by Audi's experts. Our examination of the record shows that Sero's additional affidavit in fact admitted the truth of Donner's affidavit regarding the absence of an electronically controlled throttle in the Audi 5000 class vehicles:

"2. Audi's claim that the Audi 5000 is not equipped with an 'electronic throttle control system' or 'ETC' is an attempt to mislead the court by engaging in semantics

and definitional tricks. **True, the Audi 5000 is not equipped with an ETC (Electronic Throttle Control)–or 'drive-by-wire' system as it is sometimes known–which is installed on vehicles of fairly recent vintage.** In these cars, there is no mechanical connection between the accelerator pedal and the throttle, unlike the Audi 5000. However, there is no dispute that the throttle cable and related linkages in the Audi 5000 *are controlled by an electronic printed circuit board, known as the cruise control ECU.*" (Emphasis in bold added; emphasis in italics in original.)

Thus, we find that there was no genuine issue of material fact that the Audi 5000 class vehicles were not equipped with an electronically controlled throttle, but with a purely mechanical system. Therefore, the throttles in the class vehicles were not controlled by "sensitive electronics" as opined by Sero. As discussed, because the plaintiffs failed to present evidence to contradict Donner's statements that mechanically connected linkage was by its very nature immune to EMI, no genuine issue of material was raised that the purely mechanical throttle system in the Audi 5000 vehicles were inherently immune to any EMI.

¶ 54    Likewise, we find that Sero's opinion was not supported by any facts as to his assertion that Audi should have encased the cruise control system's electronic control unit in metal, instead of plastic. Sero stated as a fact that the electronic control unit of the cruise control system was not encased in a metal housing, and that encasing it in a metal housing would serve as a key protective feature in the cruise control system against the effects of EMI. However, Donner attested in his affidavit that the cruise control system's electronic control units in the Audi 5000 vehicles *were actually* enclosed in metal housing, not plastic, as Sero opined. The plaintiffs, in filing an additional affidavit by Sero on September 2, 2011, again failed to present any evidence challenging Donner's affidavit that the electronic control unit was encased in a metal housing. Thus, in light of these circumstances, and given that Sero had not personally inspected an Audi 5000 class vehicle, Donner's affidavit opinion must be taken as true. See *Hister*, 304 Ill. App. 3d at 691 (affidavits presented in support of summary judgment which are not contradicted by counteraffidavits must be taken as true); *Woolums*, 323 Ill. App. 3d at 636 (affidavits in opposition to motions for summary judgment must consist of facts admissible in evidence, rather than merely conclusory matters). Because Sero's opinion in his affidavit that the cruise control system's electronic control unit was encased in plastic was not supported by facts admissible in evidence, we find that the circuit court properly struck Sero's opinion as "conclusory and speculative." Further, because Dr. Berg's affidavit centered upon his literature review of published scientific studies regarding pedal misapplication by drivers and did not address defect issues in the Audi 5000 class vehicles, Dr. Berg's opinion could not support the plaintiffs' claims of defects in the sixth amended complaint. Thus, we find that there was no genuine issue of material fact that the electronic control unit in an Audi 5000's cruise control system was encased in metal and that metal housing served as a key protective feature against the effects of EMI in the cruise control system. Therefore, the plaintiffs lacked sufficient evidence to prove the essential elements of their cause of action–that is, that the Audi 5000 class vehicles had a defect that caused it to suddenly and unintentionally accelerate without driver input and that Audi fraudulently and deceptively concealed that defect from the purchasers of Audi 5000 vehicles. Accordingly, we hold that the circuit court properly granted summary judgment in favor of Audi and denied the plaintiffs' cross-motion for summary judgment.

¶ 55    Next, we determine whether the circuit court erred in finding that Audi need not respond to certain discovery requests by the plaintiffs on the basis that those requests pertained to privileged documents.

¶ 56    During discovery, in September 2010, the plaintiffs served upon Audi a "notice to admit certain facts and genuineness of relevant documents" (request to admit), asking that Audi admit to the genuineness of three documents: (1) a December 11, 1986 memorandum from Philip Hutchinson to Iain Anderson regarding the "Audi 5000 Unintended Acceleration/Status Report" (the Hutchinson memorandum); (2) a March 24, 1986 letter from Gerhard Riechel to Drs. Ernest Beuler and Heinrich Ulmer (the Riechel letter); and (3) a March 19, 1986 memorandum from Eugene Feit to Ian Ceresny regarding "Press Conference-Audi 5000" (the Feit memorandum). The Hutchinson memorandum specifically contained information regarding the "very high" complaint rate of unintended acceleration for Audi 5000 vehicles, as well as data on the accident rate, injury rate, and fatality rate of the Audi 5000 class vehicles compared to other car companies (GM, Ford, and Volvo). The Riechel letter contained recommendations from the office of general counsel at Volkswagen of America, Inc. (the importer and distributor of Audis in the United States), to Audi AG (the Audi manufacturer) regarding the unintended acceleration problem in the Audi 5000 vehicles. The Feit memorandum was sent by Feit to Ceresny, both as counsel to Audi, and contained information regarding incidents of unintended acceleration that were relayed at a press conference attended by the then New York State Attorney General Robert Abrams.

¶ 57    In response to the plaintiffs' September 2010 request to admit, Audi filed a motion asserting that the three documents were privileged and inadvertently produced during discovery and requesting that the court order the plaintiffs to withdraw their request to admit, to return all mistakenly produced privileged documents, and to destroy all copies and notes related to the privileged documents. In support of its claims of privilege, Audi submitted the affidavit of Gerhard Riechel, who stated that he was an attorney for Volkswagen of America, Inc., and was principally responsible for the supervision of Audi's defense in the instant action. Riechel further attested that Hutchinson, who authored the Hutchison memorandum regarding unintended acceleration, was an attorney who served as the company's principal contact with the National Highway Traffic Safety Administration (NHTSA) and counseled the company's senior management. Riechel also identified Anderson–the recipient of the Hutchinson memorandum–as the executive vice president who served as second-in-command to the chief executive officer.

¶ 58    In a February 2011 order, the circuit court found that both the Hutchinson memorandum and the Riechel letter were protected by the attorney-client privilege. The court found that the Hutchinson memorandum was "a communication from general counsel of [Volkswagen of America, Inc.,] to an executive vice president of [Volkswagen of America, Inc.,] a member of the control group." The court further found that the Riechel letter was a communication from counsel for Volkswagen of America, Inc., to the general counsel for Audi AG, "to an employee who was on the Board of Management and thus a control group member," as well as to Audi's outside counsel. The circuit court also found that all three documents were protected by the work product doctrine, where they all provided the mental impressions of Audi's attorneys. Accordingly, the circuit court ordered the plaintiffs to return all three privileged documents to Audi.

¶ 59 Following the entry of the circuit court's February 2011 order, the plaintiffs served upon Audi additional requests for admission, asking Audi to admit facts contained in the 1986 Hutchinson memorandum–including the data on the complaint rate, the accident rate, injury rate, and fatality rate of the Audi 5000 class vehicles. In May 2011, Audi objected to these requests and moved to strike them "to the extent that the source of any information contained herein may have been derived in whole or in part by any document that is subject to any claim of privilege." Thereafter, the plaintiffs sought to compel Audi to answer their requests for admission (motion to compel answers). On May 25, 2011, the circuit court denied the plaintiffs' motion to compel answer, by reiterating its prior February 2011 ruling that the three documents were privileged. In finding that Audi was not required to answer the plaintiffs' requests for admission, the circuit court instructed the plaintiffs that, "[i]f you get the facts from outside that privileged document, then by all means you can send out these requests to admit."

¶ 60 On appeal, the plaintiffs challenge the court's February 2011 and May 2011 orders, arguing that the circuit court erred in concluding that the three referenced documents were protected by privilege and erred in refusing to compel Audi to answer their requests for admission. Audi argues that the circuit court properly found the three documents to be privileged and ordered the plaintiffs to return them to Audi, and that the court properly denied the plaintiffs' motion to compel Audi to answer their requests for admission. Audi further argues that none of the three privileged documents pertained to the dispositive issues in this case, where they related to theories advanced by the plaintiffs in their proposed seventh amended complaint which had been properly denied.

¶ 61 We find that the plaintiffs were not entitled to relief on this basis. *Even if* the three referenced documents were not protected by privilege and Audi was compelled to admit to the facts found in the 1986 Hutchinson memorandum, the plaintiffs would still not be entitled to the entry of summary judgment in their favor. None of the information contained in the three documents–the Hutchinson memorandum, the Riechel letter, and the Feit memorandum–pertained to any *specific defects* alleged in the plaintiffs' sixth amended complaint. Specifically, the Hutchinson memorandum contained data on the complaint rate, the accident rate, injury rate, and fatality rate of the Audi 5000 class vehicles–information that at most could have supported allegations of the class vehicles' *propensity* for unintended accelerations as alleged in the proposed seventh amended complaint and which this court has already determined was properly denied. As discussed, the plaintiffs could not recover on a new theory that was not pled in the sixth amended complaint. See *Pagano*, 257 Ill. App. 3d at 911. Further, the information contained in the three documents did not relate in any way to any dispositive issues in this case, including this court's determination that the plaintiffs had previously abandoned their cruise control system theory of defect and that the circuit court properly granted summary judgment in favor of Audi. Thus, we find that the plaintiffs were not entitled to relief on this basis.

¶ 62 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 63 Affirmed.