2025 IL App (1st) 242125-U
Order filed: June 12, 2025

FIRST DISTRICT
FOURTH DIVISION

Nos. 1-24-2125 and 1-24-2142 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ROBERT BAK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 19 L 2182 |
| | ) | |
| A&R FIRST ENTERPRISE LLC, ADAMBA | ) | |
| IMPORTS INTERNATIONAL, INC., and | ) | |
| ADAM BAK, | ) | Honorable |
| | ) | John Curry, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reversed the order denying the motion for substitution of judge, vacated all orders entered after the erroneous ruling and remanded for new proceedings before a different judge.

¶ 2    Adam Bak is the sole owner of an importing company in New York called Adamba Imports International, Inc. (Adamba). Plaintiff, Robert Bak, is Adam's son and he began working for Adamba in 1994, rising to the position of treasurer. During the course of plaintiff's employment, Adamba purchased a warehouse, the legal title of which was held by a limited liability company called A&R First Enterprise LLC (A&R). Plaintiff was designated a manager of A&R; however, the parties dispute whether plaintiff and Adam were co-members (similar to shareholders) of A&R,

or whether Adam was the sole member of A&R. Plaintiff claims co-membership in A&R, whereas Adam claims to be the sole member.

¶ 3    Adam terminated plaintiff's employment with Adamba in 2017 and fired him as manager of A&R in 2018. Plaintiff then filed a two-count third amended complaint against defendants Adamba, A&R and Adam. Count I sought damages against defendants under the Limited Liability Company Act (805 ILCS 180/35-1(a)(5)(B) (West 2022)) as recompense for the allegedly "oppressive" manner in which Adam treated him while he was a member and manager of A&R. Count II sought damages against Adam for breach of fiduciary duty.

¶ 4    Defendants filed a two-count counterclaim against plaintiff. Count I sought a declaratory judgment that plaintiff was never a member of A&R and that defendants have no liability toward plaintiff and owe him no money. Count II sought damages against plaintiff for his alleged breach of fiduciary duty toward defendants while he was treasurer at Adamba. The court conducted a bench trial, found that plaintiff and Adam were co-members of A&R, and entered judgment in favor of plaintiff on counts I and II of his third amended complaint and count I of the counterclaim. The court ordered defendants to buy out plaintiff's 50% interest in A&R in the amount of $912,500 and assessed punitive damages against Adam in the amount of $75,000. The court dismissed count II of the counterclaim for plaintiff's breach of fiduciary duty, finding that count II was not timely filed and that Adam lacked standing to raise the issue. Finally, the court found defendants' attorney in direct criminal contempt and fined her $500.

¶ 5    On appeal, defendants argue that the trial court erred by: denying their pretrial motion for substitution of judge; denying their motion for a directed finding at the close of plaintiff's case; engaging in improper judicial advocacy during the trial; ruling in favor of plaintiff on counts I and II of his complaint and also awarding punitive damages against Adam; dismissing count II of their

counterclaim for breach of fiduciary duty; and finding defendants' attorney in contempt. We reverse the order denying the motion for substitution of judge, vacate all orders entered after the erroneous ruling, and remand for new proceedings before a different judge.

¶ 6    Count I of plaintiff's third amended complaint was brought pursuant to section 35-1(a)(5)(B) of the Limited Liability Company Act (805 ILCS 180/35-1(a)(5)(B) (West 2022)). Section 35-1(a)(5)(B) states that upon application by a member of a limited liability company, the company can be dissolved or the applicant's interests may be bought out if there is a finding by the circuit court that the members in control of the company "have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant." *Id.* Plaintiff alleged that Adam acted in an oppressive manner in violation of section 35-1(a)(5)(B) by declaring himself to be the sole member of A&R, removing plaintiff as manager of A&R, and failing to make timely distribution of profits to plaintiff. Plaintiff asked the court to declare that his removal as manager and member of A&R was invalid and to reinstate him as manager, to order Adam to purchase his membership interest, and to award him damages in excess of $500,000.

¶ 7    Count II alleged that Adam breached his fiduciary duty to plaintiff by declaring himself the sole member of A&R and removing plaintiff as manager, and by refusing to provide plaintiff with financial information about A&R.

¶ 8    On March 15, 2022, A&R and Adam filed a motion for leave to file a counterclaim. Adamba also joined in the motion, even though it was not yet a party to the underlying lawsuit filed by plaintiff. The counterclaim alleged that in 2009, Adamba purchased a warehouse in Illinois for the commercial distribution of its products. Adam asked plaintiff to work with an attorney, Chris Nowotarski, to set up an LLC under the name A&R to hold title to the warehouse. Nowotarski eventually drafted an operating agreement naming Adam as the sole member of A&R,

with 100% ownership interest. Plaintiff was appointed as a manager of A&R, but he was not named as a member. Unbeknownst to Adam or Nowotarski, plaintiff subsequently forged an operating agreement naming him and Adam as co-members, each with a 50% ownership interest in A&R.

¶ 9    Count I of the counterclaim sought a declaratory judgment that plaintiff was not now, and never was, a member of A&R and that the operating agreement purportedly stating that plaintiff was a member with 50% ownership interest in A&R was "not a genuine document, nor was it operational or [effective] to confer any legal rights to [plaintiff] in relation to A&R."

¶ 10    Count II of the counterclaim alleged that for the majority of his working career, plaintiff was employed at Adamba and his last position was treasurer. As treasurer of Adamba and as a non-member manager of A&R, plaintiff owed defendants a duty to act with good faith and loyalty in managing the affairs of both entities. Plaintiff breached his fiduciary duty by surreptitiously entering into contracts and sales arrangements with Adamba competitors for his own personal benefit and by entering into a competing business and diverting sales and business opportunities from Adamba to himself.

¶ 11    On March 24, 2022, the court entered a written order denying defendants' motion for leave to file their counterclaim without prejudice. The record on appeal contains no transcript of the hearing on the motion.

¶ 12    On March 29, 2022, Adam filed a motion for substitution of judge as a matter of right pursuant to section 2-1001 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1001 (West 2022)), arguing that under section 2-1001, such a motion must be granted if presented before trial and before the judge has ruled on a substantial issue in the case. Adam argued that no trial had yet been set and there had been no rulings on any substantial issues and therefore the motion was timely brought and must be granted.

¶ 13    On April 19, 2022, the trial court entered a written order denying the motion for substitution of judge. In the same order, the court granted leave for Adamba, a non-party, to move to intervene in this cause and for defendants then to re-file their motion for leave to file a counterclaim against plaintiff.

¶ 14    On April 22, 2022, Adamba filed a petition to intervene in the case pursuant to section 2-408 of the Code (735 ILCS 5/2-408 (West 2022)). In the petition for intervention, Adamba stated that "Adam and A&R and Adamba wish to advance a counterclaim against [plaintiff] in direct relation to the claims advanced by [plaintiff] in the complaint and to show his breach of duty towards [Adamba] as well as [A&R and Adam]." Adamba noted that "'[t]his court has previously denied the counterclaim because Adamba was included in it and Adamba is a non-party." Adamba argued that it was a "necessary and indispensable party for resolution of all of the claims," including the counterclaim, and it asked the court to grant the petition for intervention and to allow the filing of the counterclaim.

¶ 15    Also on April 22, 2022, defendants refiled their motion for leave to file a counterclaim against plaintiff.

¶ 16    On July 6, 2022, the court entered a written order granting both Adamba's petition for leave to intervene and defendants' motion to file their counterclaim against plaintiff.

¶ 17    The cause proceeded to trial. Plaintiff testified that he began working for his father's (Adam's) importing company, Adamba, right out of high school, in 1994, and he received a salary plus benefits such as life insurance and health insurance. Initially plaintiff performed clerical work, but he eventually assumed greater responsibilities, such as meeting with bankers and suppliers, running the warehouse, and solving any delivery problems. Plaintiff was promoted to treasurer but he explained that the treasury position was "ceremonial at best" and that his primary role as

treasurer was to sign checks on behalf of Adamba. Plaintiff testified that he did not have the authority to make "final decisions on finances" nor could he override Adam's decisions.

¶ 18    Plaintiff further testified that in 2009, Adamba purchased a warehouse in Des Plaines to be used for the commercial distribution of its products. Adam also decided to form an LLC (A&R) to take title to the warehouse, naming plaintiff as the sole member of A&R. An attorney, Chris Nowotarski, prepared an operating agreement reflecting that plaintiff would be the sole member of A&R and sent plaintiff a copy, which he signed. About 30 minutes later, Adam told plaintiff that he had changed his mind and now wanted them to be co-members of A&R.

¶ 19    Nowotarski prepared another operating agreement (the co-membership agreement) naming plaintiff and Adam co-members of A&R. On July 31, 2009, Nowotarski emailed the co-membership agreement to plaintiff, who printed it out in his office. Later that evening, plaintiff and Adam signed the co-membership agreement in the presence of each other. Another employee of Adamba, Tamara Tarnacka, also was present during the signing.

¶ 20    Plaintiff's job duties began to change in 2013 after Adam remarried. Plaintiff noticed that over the course of several years, Adam was taking away many of his job responsibilities and was no longer allowing him to order containers, write checks, and run the warehouse. During this time-period, Adam regularly threatened to terminate him; such threats were made within the hearing of other employees and in meetings with suppliers, clients, and vendors. Adam terminated plaintiff's employment with Adamba on July 17, 2017. On April 24, 2018, Adam sent plaintiff an email stating that he also was terminating plaintiff as manager of A&R and that he (Adam) was the sole member of A&R.

¶ 21    Adam testified that he is the owner and sole shareholder of Adamba, a business which imports food and alcohol products. In the late nineties, Adam designated plaintiff as Adamba's

"secretary treasurer." Adam could not recall plaintiff's duties as secretary but stated that his duties as treasurer included overseeing financial statements and "working with" Adamba's accountant and bookkeeper. Plaintiff also had check-writing authority.

¶ 22     In 2009, Adamba purchased a warehouse in Des Plaines. Adam decided to set up A&R as an LLC to hold legal title to the warehouse and he hired Nowotarski to draft A&R's operating agreement naming Adam and plaintiff as co-members of A&R. Nowotarski drafted the agreement, but it was never signed by Adam. Instead, Adam subsequently directed Nowotarski to draft an operating agreement designating Adam as the sole member of A&R.

¶ 23     On cross-examination, Adam was asked about the signed A&R operating agreement produced by plaintiff, showing Adam and plaintiff as co-members of A&R. Adam testified that the document was "fake," as he never signed any operating agreement giving plaintiff any membership in A&R.

¶ 24     Adam testified that he terminated plaintiff from his employment with Adamba in 2017 because plaintiff' had become argumentative and his job performance was deteriorating. On April 24, 2018, Adam sent plaintiff an email removing him as manager of A&R.

¶ 25     Chris Nowotarski testified that in July 2009, Adam directed him to draft a co-membership operating agreement naming Adam and plaintiff as co-members of A&R. Nowotarski prepared the co-membership agreement and sent it to Adam, but he never signed it. Adam subsequently instructed Nowotarski in August 2009 to prepare an operating agreement designating Adam as the sole member of A&R. In accordance with Adam's instructions, Nowotarski drafted the operating agreement naming him as A&R's sole member.

¶ 26     On direct examination, Nowotarski was shown the signed A&R operating agreement produced by plaintiff, which states that plaintiff and Adam are co-members of A&R. Nowotarski

testified that the signed operating agreement produced by plaintiff was not the same one which he had prepared and sent to Adam, as the signed agreement was formatted differently and contained a different footer than the one Nowotarski had prepared.

¶ 27    After plaintiff rested his case, defendants moved for a directed finding in their favor, which was denied.

¶ 28    Defendants then called Tamara Tarnacka, who testified she was a general manager for Adamba. Tarnacka was asked about plaintiff's testimony that she was present at a meeting on July 31, 2009, when plaintiff and Adam signed an operating agreement designating them as co-members of A&R. Tarnacka testified that she never witnessed Adam and plaintiff sign any operating agreement for A&R.

¶ 29    Defendants called plaintiff as a witness, who admitted that even while working for Adamba, he effectively competed against it by selling imported food products without telling Adam that he was doing so.

¶ 30    During plaintiff's testimony, the trial court *sua sponte* raised the issue of whether count II of defendants' counterclaim for breach of fiduciary duty is barred by the applicable New York statute of limitations. After hearing arguments on the issue, the court dismissed count II based on the statute of limitations and lack of standing and also found defense counsel in contempt for statements she made that the court construed as an attack on its dignity.

¶ 31    Following closing arguments, the court issued its ruling detailed earlier in this order, finding in favor of plaintiff and ordering defendants to buy out his interest in A&R in  the amount of $912,500. The court also awarded plaintiff punitive damages against Adam in the amount of $75,000 and ordered defense counsel to pay $500 based on the contempt finding against her.

¶ 32    On appeal, defendants argue that the trial court made a number of errors, beginning with its denial of Adam's pretrial motion for substitution of judge. We will only address defendants' argument concerning the denial of the motion for substitution of judge because it is dispositive.

¶ 33    In Illinois, civil litigants are entitled to one substitution of judge without cause as a matter of right. 735 ILCS 5/2-1001(a)(2)(i) (West 2022). The trial court must grant a party's motion for substitution of judge if the motion "is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." *Id.* § 2-1001(a)(2)(ii). We review *de novo* the denial of a motion for substitution of judge as of right. *Gohari v. McDonald's Corp.*, 2022 IL App (1st) 201086, ¶ 11. Such review "should lean toward favoring rather than defeating a substitution of judge." *Rodisch v. Commacho-Esparza*, 309 Ill. App. 3d 346, 350 (1999).

¶ 34    We note certain appellate court decisions have found an exception to section 2-1001(a)(2)(ii) and held that the trial court may deny a motion for substitution of judge even before any rulings on substantial issues have been made, where the applicant has "tested the waters" and formed an opinion as to the court's disposition toward his case. See *e.g.*, *Rocha v. Fedex Corp.*, 2020 IL App (1st) 190041, ¶ 74. However, our supreme court has recently rejected the "test the waters" doctrine, finding it "incompatible with the plain language of section 2-1001(a)(2)." *Palos Community Hospital v. Humana Insurance Co.*, 2021 IL 126008, ¶ 28. The supreme court explained:

> "As the statutory text makes clear, so long as a party files its substitution motion before certain, specified occurrences, the party is 'entitled to one substitution of judge without cause as a matter of right.' 735 ILCS 5/2-1001(a)(2)(i)(West 2016). In part, the statute provides that a motion for substitution of judge as of right shall be granted if the motion is

presented both before the trial or hearing begins and before the judge to whom the motion is presented has ruled on any substantial issue in the case. [Citation.] A party having 'been able to form an opinion as to the court's disposition toward his or her case' is not among the criteria listed in the statute. Thus, the test the waters doctrine is an improper basis on which to deny a motion for substitution of judge as of right." *Id.*

¶ 35    In light of *Palos Community Hospital*, we consider only whether, under section 2-1001(a)(2)(ii), Adam's motion for substitution of judge was presented before trial and before the court ruled on a substantial issue in the case. Neither party disputes that the motion for substitution of judge was presented before trial; the issue is whether the court had ruled on a substantial issue prior to the presentation of the motion.

¶ 36    A judge's ruling is considered substantial for purposes of section 2-1001(a)(2)(ii) if it directly relates to the merits of the case. *Rodisch*, 309 Ill. App. 3d at 350-51. We have found that the trial court ruled on a substantial issue when it struck a complaint after substantive review (*Rocha*, 2020 IL App (1st) 190041, ¶ 76), denied a motion to dismiss (*City of Peoria v. Peoria Rental, Inc.*, 61 Ill. App. 3d 1, 3 (1978)), and issued a preliminary injunction (*Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184, 188 (1994).  We have found that the trial court did not rule on a substantial issue when it granted continuances (*Becker v. R.E. Cooper Corp.*, 193 Ill. App. 3d 459, 463 (1990)), granted a motion to amend a complaint where there was no objection (*People ex rel. Alexander v. Keogh*, 81 Ill. App. 3d 729, 730 (1980)), and ruled on discovery motions and a motion for severance of issues (*Delta Oil Co. v. Arnold*, 66 Ill. App. 3d 375, 380-81 (1978).

¶ 37    In the instant case, the April 19, 2022, written order denying Adam's motion for substitution of judge stated:

"This case coming to be heard on Defendant Adam Bak's Motion for Substitution of Judge as a Matter of Right pursuant to 2-1001(a)(2), the court previously having denied [on March 24, 2022] leave to file a Counterclaim by Defendant Adam Bak (upon presentment of said motion) and said counterclaim having never been filed, the Court orders as follows:

1) The Court denies the Motion by relying upon [*Rocha] v. Federal Express*, 2020 IL App Court the right to deny a motion for substitution. (1st) 190041, [¶] 26 and finds that the striking of a complaint is a substantial issue which gives the right to deny a motion for substitution.

2) The Court grants leave for Adamba Imports, a non-party, to move to Intervene in this cause and said motion shall be filed on or before May 3, 2022;

3) The Court grants leave for Defendants to re-file their Motion for Leave to file a Counterclaim against Robert Bak, also on or before May 3, 2022 and said motions may be filed together as one."

¶ 38    Although the order references the striking of a complaint as grounds for denying the motion for substitution of judge, we note that the trial court here *never* struck plaintiff's complaint. Plaintiff posits that the court was equating the striking of a complaint with the denial of leave to file the counterclaim, in effect finding that its earlier denial of leave to file the counterclaim was a ruling on a substantial issue precluding substitution.

¶ 39    Even assuming that the trial court's April 19, 2022, order denying the motion for substitution of judge was based on its earlier order on March 24, 2022, denying defendants leave to file a counterclaim, the denial of the substitution motion was erroneous because the earlier denial of leave to file a counterclaim did not directly relate to the merits of the case and thus did not

constitute a ruling on a substantial issue. The April 19, 2022, order makes clear that the court's denial of the motion for leave to file a counterclaim on March 24, 2022, was premised on the fact that one of the movants was Adamba, who was not yet a party. The April 19 order granted Adamba leave to move to intervene and for defendants then to refile their motion for leave to file a counterclaim. Pursuant to the April 19 order, Adamba subsequently moved to intervene and defendants refiled their motion for leave to file a counterclaim. The court granted both motions.

¶ 40    Thus, on this record, the denial of the motion for leave to file a counterclaim on March 24, 2022, was *not* a substantive ruling on the merits of the counterclaim akin to the striking of the complaint in *Rocha* but instead was a procedural ruling requiring that all the movants be made parties prior to the filing. In other words, the denial of leave to file the counterclaim did not directly relate to the merits of the counterclaim and therefore was not a ruling on a substantial issue. The trial court had no discretion to deny the motion for substitution of judge where its earlier denial of leave to file the counterclaim was not a ruling on a substantial issue, and where the record contains no indication of any other rulings on a substantial issue prior to defendants' filing of the substitution motion. "[W]hen a motion for substitution of judge is timely filed and in proper form, it must be granted and any order entered after its presentation is a nullity." (Internal quotation marks omitted.) *Palos Community Hospital*, 2021 IL 126008, ¶ 34. Accordingly, we vacate all orders entered after the motion for substitution of judge was made on March 29, 2022, and remand for new proceedings before a different judge.

¶ 41    Defendants ask us to address their other issues on appeal. Our supreme court has stated:

        "When appropriate, a reviewing court may address issues that are likely to recur on remand
        in order to provide guidance to the lower court and thereby expedite the ultimate
        termination of the litigation. With limited exception, however, courts should refrain from

deciding an issue when resolution of the issue will have no effect on the disposition of the appeal presently before the court." *Pielet v. Pielet*, 2012 IL 112064, ¶ 56.

¶ 42    Defendants here have not shown that the other issues on appeal are likely to recur on retrial before a different judge and therefore any discussion of those issues is premature.

¶ 43    For all the foregoing reasons, we reverse the order denying the motion for substitution of judge and vacate all orders entered after the presentation of the substitution motion and remand for new proceedings before a different judge.

¶ 44    Reversed in part and vacated in part; cause remanded with directions.